715 P.2d 334 (1986)
The PEOPLE of the State of Colorado, Petitioner-Appellee, In the Interest of L.L., C.L., K.L., and L.L., Children,
And Concerning J.T., Respondent-Appellant.
No. 85SA147.
Supreme Court of Colorado, En Banc.
March 10, 1986.
*335 George Reddin, Fort Morgan, for petitioner-appellee.
Robert B. Chapin, Brush, for respondent-appellant.
VOLLACK, Justice.
This appeal involves the termination of the parental relationship between a mother, J.T., and her four children, L.L., C.L., K.L., and L.L. The Morgan County District Court adjudicated the children dependent or neglected, and later entered an order terminating the parent-child relationships pursuant to section 19-11-105, 8 C.R.S. (1978 & 1985 Supp.). While the appellant raises several issues on appeal, we affirm the order of termination.

I.
J.T. is the mother of six children, four of whom are minors: L.L., C.L., K.L., and L.L. The children's father is deceased. On March 16, 1982, the Morgan County Department of Social Services commenced a dependency or neglect action in the Morgan County District Court, alleging that the six children (all six were minors at that time) were dependent or neglected because the mother had failed to provide proper parental care and had failed to provide proper subsistence necessary for the children's health and well-being. Further, the department alleged the children's environment to be injurious to their welfare.
At the detention hearing, J.T. was advised of her legal and constitutional rights, including an advisement of her right to counsel. The record provides no indication that J.T. requested counsel for the detention hearing. However, immediately after the hearing, counsel was assigned to J.T.
On April 28, 1982, the district court found, by a preponderance of the evidence, that all the children were dependent and neglected. The children were placed in the physical and legal custody of the Department of Social Services and have been in foster care. Four treatment plans were filed and approved by the court, the last of which was adopted on November 10, 1983. On August 14, 1984, the court issued an order of termination.
Included in the court's factual basis of its termination ruling were four reports prepared by various doctors. Dr. Joan P. Gillespie prepared one of the reports, but because she died prior to the termination proceedings, she was not available for cross-examination. As a result, the trial judge did not allow any specific reference to this particular report. However, because the report was part of the court file and because it was paid for by the court and prepared at the court's direction, the judge did not strike the report from the file and referred to it in the order of termination.
In accordance with section 19-11-105(1)(b) through (3), 8 C.R.S. (1978 & 1985 Supp.), the court found (1) that a proper treatment plan had not been complied with; (2) that J.T. was "unfit"; (3) that the conduct or condition of J.T. was unlikely to change within a reasonable time; and (4) that the primary concerns for the emotional needs of the children warranted against visitation, which, in all likelihood, would prolong foster care and delay or prevent the successful adoption of the children. Accordingly, the court ordered that there be only one meeting between the children and J.T. and, thereafter, no contact. The order was made nunc pro tunc August 8, 1984.
J.T. filed this appeal. We affirm the termination of parental rights.

II.
J.T. first argues that because she was without counsel at the detention hearing, she was denied her statutory right to have counsel at every stage of the proceedings. J.T. contends this was reversible error. We disagree.
Section 19-1-106(1)(a), 8 C.R.S. (1978 & 1985 Supp.), provides the respondent with the right to be represented by counsel at every stage of the proceedings. This section is made applicable to parents in dependency *336 or neglect actions by section 19-1-106(1)(d), 8 C.R.S. (1978 & 1985 Supp.).
The court of appeals in People in Interest of J.B., 702 P.2d 753 (Colo.App.1985), held that, under the statute above, the failure to provide a parent with counsel at a proceeding for review of out-of-home placement was reversible error. Unlike the present proceeding, People in Interest of J.B. did not deal with a detention hearing. Rather, it involved the absence of counsel after counsel had already been appointed. The respondent's counsel had been discharged by the court after an adjudication of dependency and neglect had been entered. Three review hearings without the respondent having counsel followed. Thereafter, counsel was reappointed, and the matter proceeded to a termination hearing whereupon the court terminated the respondent's parental rights.
Here, the record shows that on March 16, 1982, at the detention hearing, J.T. was advised of her legal and constitutional rights, including her right of counsel. Neither does J.T. allege nor does the record show that a request was made by J.T. for an attorney during the detention hearing. Immediately following the hearing, J.T. requested and was appointed counsel. Because J.T., while advised of her legal right of counsel, failed to request an attorney at the detention hearing, we hold that J.T.'s lack of counsel at the detention hearing was not reversible error.

III.
J.T. next argues that it is constitutionally impermissible for a decree of dependency or neglect based on facts found under the preponderance of the evidence standard to serve as a predicate for termination of parental rights, which requires the higher constitutional standard of proof of clear and convincing. We answered this very question in People in Interest of A.M.D., 648 P.2d 625 (Colo.1982). We held that due process of law is accorded to the parties in a termination of parental rights proceeding under Colorado law when the grounds for termination under section 19-11-105, 8 C.R.S. (1978 & 1985 Supp.), are established by clear and convincing evidence and the underlying dependency or neglect determination is established by a preponderance of the evidence. Because we find the holding of that decision well reasoned and proper, we need not readdress the issue here.

IV.
The next issue is whether the trial court committed reversible error in refusing to strike Dr. Gillespie's report from the record since Dr. Gillespie was unavailable to testify. In People in Interest of A.M.D., 648 P.2d 625, 641 (Colo.1982), we noted that dispositional and evaluative reports which fall within the purview of section 19-1-108, 8 C.R.S. (1978 & 1985 Supp.), may be admitted into evidence so long as the reports are furnished to counsel in advance of the termination hearing and the persons who wrote the reports or prepared the material contained therein are available for direct or cross-examination upon the request of the respondent or any other interested party. Here, the court considered the report in its factual basis to support its legal conclusions for termination.
The People argue that the report was part of the court file, was paid for by the court, and prepared at the court's direction; and, therefore, the court properly refused to strike the report from the file and properly stipulated that, in view of the fact that Dr. Gillespie was not available for cross-examination, there should be no specific reference or testimony related to this report.
The court file contained three other reports which recommended termination of the parental rights of the respondent. The court file also contained the final placement and treatment plan which recommended termination of parental rights.
While a more proper course would have been for the trial court to have stricken the report from the file, any error committed was harmless. Notwithstanding the inclusion of Dr. Gillespie's report, the evidence supporting the court's decision to terminate *337 the respondent's rights to her four younger children was substantial.

V.
The respondent next argues that the People's motion for termination failed to allege sufficient factual grounds to proceed to hearing. We disagree.
The applicable statute reads in pertinent part:
(1) Termination of a parent-child legal relationship shall be considered only after the filing of a written motion alleging the factual grounds for termination, and termination of a parent-child legal relationship shall be considered at a separate hearing following an adjudication of a child as dependent or neglected....
§ 19-11-102(1), 8 C.R.S. (1978). The People set forth in the motion for termination the following allegations: (1) that the children of J.T. were adjudicated as dependent or neglected on May 23, 1982; (2) that since then, the children have been in the physical and legal custody of the Department of Social Services and have been in foster care; (3) that the court approved a total of four treatment plans, none of which have been reasonably complied with by J.T. nor have been successful; (4) that two licensed psychologists conducted independent evaluations of J.T. and both recommended that the parental rights of J.T. as to the four above-named children be terminated; (5) that J.T. is unfit; and (6) that J.T.'s failure to comply with the four treatment plans shows that the conduct or condition of J.T. is unlikely to change within a reasonable period of time.
In People in Interest of M.H., 683 P.2d 807 (Colo.App.1984), the court of appeals examined factual allegations similar to, but not as extensive as, those in the present case and concluded that the allegations in that case constituted an appropriate recitation of factual grounds for termination under section 19-11-103(1), 8 C.R.S. (1978). J.T. attempts to distinguish her case from People in Interest of M.H. on the grounds that the final treatment plan was not approved until November 11, 1983, and that the motion for termination was filed on May 2, 1984, which did not provide adequate notice to J.T. of the specific parenting skills needing improvement. This distinction is unpersuasive. The treatment plan of November 11, 1983, was not the first treatment plan approved by the court; rather, it was the fourth treatment plan that the court had approved. The record shows that, in addition to the four treatment plans, there were twelve other hearings involving the respondent prior to the termination hearing. Further, there were four psychological evaluations involving the respondent or her children. All of these evaluations dealt with the deficiencies of the respondent, the problems with the family and her relationship with her children.
We, therefore, conclude that the mother, as well as her counsel, was aware of the specific problems and deficiencies in her parenting which were the basis of the motion for termination, and that the motion for termination satisfied the required factual basis mandated by section 19-11-103(1).

VI.
J.T. next argues that the treatment plan of November 8, 1983, was inappropriate. In order to sustain a termination of the parent-child legal relationship, the court must find that an appropriate treatment plan approved by the court has not been complied with by the parent or has not been successful. § 19-11-105(1)(b)(I), 8 C.R.S. (1978). "Appropriate treatment plan" is now defined by section 19-3-111(1)(e), 8 C.R.S. (1978 & 1985 Supp.). That section requires an appropriate treatment plan to be:
A treatment plan approved by the court which is reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and which is relative to the child's needs.
J.T. argues that the November 8, 1983, treatment plan was inappropriate because the expectations for J.T. were too high and *338 the six-month period of time was too short. In People in Interest of B.J.D., 626 P.2d 727 (Colo.App.1981), the court of appeals held that the trial court erred in ruling that a single treatment plan was appropriate because the plan failed to take into consideration the mother's pregnancy, lack of transportation, and lack of income. The court noted that the sole purpose of the treatment plan was to reunite a parent and child in the kind of relationship which would be beneficial to both, under conditions which were designed to eliminate those factors which necessitated society's intrusion into the family in the first instance.
Here, while J.T. was expected to overcome the battered woman syndrome, avoid sado-masochistic relationships, conquer her alcoholism and stop a parent-child role reversal with the children, all within a six-month period of time, it must be stressed that this was the fourth such treatment plan approved by the court, not the first. Because of this factual differentiation, we hold that the November 8, 1983, treatment plan, when viewed in light of the previous three treatment plans, was appropriate.

VII.
J.T. contends that the court's finding that the Morgan County Department of Social Services had made reasonable efforts to rehabilitate the respondent was erroneous. Section 19-11-105(2)(i), 8 C.R.S. (1978), requires the court in determining parental unfitness to consider whether there have been "[r]easonable efforts by child-caring agencies which have been unable to rehabilitate the parent or parents." We find no merit in J.T.'s argument that no reasonable efforts were made. The record shows that there were numerous treatment plans, hearings, and evaluations. All show a substantial effort upon the part of the Department of Social Services to rehabilitate J.T.

VIII.
Finally, J.T. contends that the court's order of termination under the circumstances of the case was improper. She argues that because the record contains some evidence that the results of the treatment plan showed improvement, the plan must, therefore, be judged successful. Her reading of the record is in error. The record shows that J.T. made an effort to comply with the fourth plan for the period from November 10, 1983, to February 10, 1984, and no effort to comply with the plan thereafter. Nowhere is there any testimony that the plan had been successful or had shown signs of improvement. We, therefore, hold that the court's order of termination was proper.
Based upon the foregoing discussion, we affirm the trial court's termination of parental rights.
ROVIRA, J., does not participate.