[No. 7030–1–III.   Division Three.   April 1, 1986.]

*In the Matter of the Welfare of*
R. CHURAPE, ET AL.

VICTOR CHURAPE, *Appellant,* v. THE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Elizabeth Fry* (appointed counsel for appeal) and *Phillip J. Kassel* of *Evergreen Legal Services* (*Alice Bussiere,* of counsel), for appellant.

*Douglas S. Boole, Prosecuting Attorney,* and *Michael C. Dempsey, Deputy,* for respondent.

*Scot D. Stuart,* for R. Churape, et al.

THOMPSON, J.—Victor Churape appeals the termination of his parental rights. We reverse and remand for the taking of additional testimony.

In August 1981, R., the 6–month–old daughter of Virgilio (Victor) Churape and Lilly Rose Churape, was declared a dependent child pursuant to RCW 13.34.030(2) and placed in foster care. Since September 1983, R.'s placement has remained constant. At the time of the original dependency and throughout the course of the subsequent proceedings, Mr. Churape was an undocumented Hispanic migrant farm worker who was subject to deportation and, in fact, deported several times. The parties' second daughter, N., was also found dependent March 9, 1983, and placed in a foster home where she has continuously resided. Periodic dependency review hearings were conducted thereafter, and a petition for termination of parental rights was filed by the Department of Social and Health Services August 9, 1983.

Although little contact was maintained between Mr. Churape and his daughters between January and September 1983, frequency of visitation significantly increased thereafter, and the termination petition was dismissed November 15, 1983. Dependency was continued in 1984, but another petition to terminate was filed June 15, following Mr. Churape's second deportation that year. In addition to being subject to deportation during the period of dependency, Mr. Churape was periodically out of the area as an agricultural laborer.

Pursuant to RCW 13.34.130(2)(a), DSHS offered services and established certain requirements before allowing the parents to resume custody. Those services included available alcohol treatment and counseling for the mother, homemaker services, parenting training, referral to employment security, interpreter services, and transportation for

visitation. Although Mr. Churape understands some English, he does not communicate well in that language. The need for transportation resulted from the fact R. was placed in a foster home 40 miles away and for a time Mr. Churape had no access to transportation. Although Mr. Churape had paid no child support, he had obtained the required housing, maintained periodic employment, and visited the children 25 times in 1983 and 1984.

During the course of the termination hearing which was scheduled over 5 days commencing December 18, 1984, and concluding January 17, 1985, Mr. Churape married Barbara Churape, a non–Spanish speaking United State citizen. Both testified to the initiation of immigration procedures to modify Mr. Churape's illegal status based on the marriage. At the conclusion of the hearing, the court commissioner terminated Mr. Churape's parental rights. He appeals. An order dated September 20, 1984, terminating the mother's parental rights has not been appealed.

We are asked to examine whether the evidence is sufficient to support the trial court's conclusions. Clear, cogent and convincing evidence is necessary to sustain an order terminating parental rights and on appeal trial court findings of fact are not to be disturbed if supported by substantial evidence. *In re Pawling,* 101 Wn.2d 392, 399, 679 P.2d 916 (1984); *see Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982).

A court may terminate the parent/child relationship when each of the six elements of RCW 13.34.180 are established and termination is in the best interests of the child. *In re Esgate,* 99 Wn.2d 210, 212, 660 P.2d 758 (1983); RCW 13.34.190.

RCW 13.34.180 provides in part:

> A petition seeking termination of a parent and child relationship may be filed in juvenile court. Such petition shall conform to the requirements of RCW 13.34.040 as now or hereafter amended and shall allege:
> (1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home;

The trial court concluded there was little likelihood conditions would be remedied to the extent the children could be returned to their parents in the near future pursuant to RCW 13.34.180(5).

At the threshold, the evidence clearly established grounds for finding both children dependent in 1981 and 1982 under any of the RCW 13.34.030 statutory bases. Moreover, it is clear, due in major part to the fact he was an illegal immigrant agricultural worker, Mr. Churape failed to maintain significant contact with his children until September 1983, when R. was 3 and N. was 1. At that time, R. had just been placed in the foster home where she continued to reside at the time of termination. N. had been placed in a foster home October 28, 1982, and maintained continued residence there also. The DSHS counselor testified that cultural and language barriers had developed during this early period, and no bonding occurred between the parent and children. In the absence of a sustained or continuing interest by the father in his children, stable relationships had developed in the foster families. The counselor concluded the father's 3 months of visitation was not sufficient to offset the effect of 2½ years of sporadic contact.

On the other hand, the only "unremediable" condition testified to was lack of contact with the children prior to September 1983. The DSHS counselor testified Mr. Churape could be an adequate parent, was fond of the children, and would be a gentle but firm disciplinarian. Despite deportation and transportation problems stemming from the distant placement of R., Mr. Churape managed to visit N. 25 times and R. 13 times between September 1983 and December 1984. Moreover, he acquired a trailer and, later, an apartment which was found adequate by the caseworker. At the time of termination, he had steady employment, adequate housing, and was married to a spouse who was willing and able to help raise the children and assist him in altering his illegal immigration status. These latter facts militate against the court's finding that termination was warranted.

Although deference to the trial court's determination is particularly important in termination cases, *In re Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980), nonetheless, to satisfy the clear, cogent and convincing standard, the evidence must be "more substantial" than the ordinary civil preponderance of the evidence standard. *In re Hall*, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983). Although the record clearly establishes the presence of serious deficiencies during the dependencies, it also establishes strong evidence that they had been remedied.

■ Legislative requirements contained in the 1977 enactment of RCW 13.34 regarding dependency reviews and plans are not merely hoops the parties must jump through. They are the means provided to attempt to alleviate, mitigate, or cure existing problems that have required state intervention. RCW 13.34.130. The legislative focus is on keeping the family unit intact. RCW 13.34.020. Hence, reuniting the family must be the principal goal of the Department of Social and Health Services. Pursuant to the policy set forth in RCW 13.34, prior to issuing an order terminating the parent and child relationship, the trial court must find clear, cogent and convincing evidence

establishing the first six RCW 13.34.180 allegations for termination. RCW 13.34.190(1).[1] Only after those factors are deemed established does the court focus its analysis on the best interests of the child. RCW 13.34.190(2). *See ABA Standards Relating to Abuse and Neglect,* Std. 6.4, at 119–20, and Commentary at 120–22 (Tent. Draft, 1977) (rejecting the "best interest" test as it relates to dependency dispositions). Here, it appears the trial court made a premature "best interest" determination without first fully examining the reunification factors.

Although we are not satisfied the clear, cogent, and convincing standard was met as to RCW 13.34.180(5) remediability, because considerable time has passed since the order of termination was entered, this court is reluctant to dismiss the termination proceeding. Intervening circumstances dictate the need to take additional testimony regarding whether problems necessitating state intervention have been remedied and whether reunification of the family can now or in the near future be effectuated, particularly in light of subsequent DSHS evaluations of the Churape home dated September and October 1985. We do not limit this additional testimony to the issue of satisfaction of RCW 13.34.180(5) since the scope of the hearing is better left to the trial court after being advised of present circumstances.

Our remand is directed toward requiring the court to place emphasis on the legislative mandate to attempt to keep families together. RCW 13.34.020. The fact these children have been in foster homes and have developed ties to their foster parents cannot be the controlling consideration, particularly in light of the need to avoid long–term foster

---

[1]Alternately, the order may be issued:

(A) without satisfaction of subsection (3) of RCW 13.34.180 if subsections (1), (2), (4), (5), and (6) are established beyond a reasonable doubt, and the order *is in* the best interest of the child, or

(B) if subsection (7) of RCW 13.34.180 (identity and whereabouts of the parents are unknown and no parental claim within 2 months) is established beyond a reasonable doubt and the order is in the best interests of the child. RCW 13.34-.190.

care. Although, as time passes, the task becomes more difficult, the trial court may find that a bond can be developed between these children and their father and can grow to replace that which now exists between the children and their foster parents.

We reverse but remand to the trial court for further proceedings consistent with this opinion.

GREEN, C.J., and MCINTURFF, J., concur.