[No. 17566–1–I. Division One. May 20, 1987.]

AGNES KRAUSE, *Appellant,* v. CATHOLIC COMMUNITY SERVICES, *Respondent.*

*Dennis Benjamin* of *Washington Appellate Defender Association,* for appellant.

*Patrick Geraghty,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Delores A. Peterson, Assistant,* amici curiae for respondent.

SWANSON, J.—Agnes Jean Krause appeals the superior court orders terminating her parental rights in James Sneddon and Teddy O'Leary.[1] Her appeal presents these main issues: (1) whether the Washington parental rights termination statute, which requires clear, cogent and convincing evidence of the termination allegations, is unconstitutional where one of the allegations is a prior dependency determination based upon a preponderance of the evidence and (2) whether sufficient evidence supports the termination of parental rights here.

Krause is the mother of James Sneddon, born October 11, 1980, and Teddy O'Leary, born on June 5, 1982, who were 5 years old and 3 years 4 months old, respectively, at the time of the termination proceedings. Krause suffers

---

[1]The termination of the parental rights of Douglas Penrod, James Sneddon's alleged father, and Daniel O'Leary, Teddy O'Leary's alleged father, has not been appealed.

from a manic–depressive illness with acute manic phases. During the 4 years prior to the termination proceedings, she had been hospitalized at least four times for acute psychotic episodes. During such an episode she exhibits extreme behavior and displays a lack of judgment, disorientation, and impulsiveness. Krause has an underlying personality disorder which prevents her from having insight into her illness so that she is unaware of her behavior during manic episodes. For about 2 years before the termination proceedings, Krause had been relatively stable with occasional giddy episodes resulting in poor judgment in her supervision of Teddy. The trial judge found by clear, cogent and convincing evidence that Krause will suffer similar episodes in the future, when she will be an extreme danger to her children.

In March 1981 when James was 5 months old, he was removed from Krause's custody while she was living in Utah and he was placed in foster care. Shortly thereafter Krause was placed in the University of Utah Medical Center Psychiatric Unit and subsequently was committed to the Copper Mountain Mental Health Intensive Therapy Unit for about 4 months. At 2½ years of age, James was returned to Krause's care and was taken to Seattle by his mother, with whom he remained for 2 months until he was again removed from her care and returned to Utah in May 1983 because of a manic episode which Krause experienced.

When Teddy was between 3 weeks and 4 months old, a public health nurse who visited the home on five occasions found Krause's parenting to be appropriate. In May 1983 when Teddy was 11 months old, he was removed from Krause's care when she had a manic episode during which she was observed throwing her belongings out of her second–story apartment window and dangling Teddy from the same window. At that time, Teddy was physically emaciated and emotionally disturbed. The return to Krause's care and separation from his Utah foster family had caused James severe emotional damage for which he required psychological treatment. Krause was committed to Harborview

Medical Center for treatment of her manic–depressive illness. On June 13, 1983, agreed orders were entered finding James and Teddy to be dependent children.

In July 1984 Krause married Steven Krause, who has been hospitalized numerous times for paranoid schizophrenia. He has responded favorably to medication but may pose an extreme danger to others if he does not receive medication.

After trial on petitions to terminate Krause's parental rights in James and Teddy, the trial court made findings pursuant to the parental rights termination statute, including a finding that termination was in each child's best interests, and issued termination orders as to both children. Krause appeals the orders.

### TERMINATION OF PARENTAL RIGHTS

In *Santosky v. Kramer,* 455 U.S. 745, 747–48, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), the United States Supreme Court held that

> [b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.

*See In re Ferguson,* 32 Wn. App. 865, 868, 650 P.2d 1118 (1982), *rev'd on other grounds,* 98 Wn.2d 589, 656 P.2d 503 (1983). Krause argues that under *Santosky v. Kramer,* the Washington parental rights termination statute is unconstitutional in requiring as an element of parental rights termination a finding of a prior determination of the child's dependency which under RCW 13.34.130 need be shown by a mere preponderance of the evidence.[2]

In *In re A.M.D.,* 648 P.2d 625, 635 (Colo. 1982), the Colorado Supreme Court rejected this same argument raised in an attack upon the Colorado statutory scheme providing for the termination of parental rights:

---

[2]We note that in the instant case the dependency of each child was shown by more than a preponderance of the evidence since agreed orders of dependency were entered for the two children.

We now consider whether a decree of dependency or neglect based on facts found by applying a preponderance of the evidence standard can serve as a predicate for termination of parental rights. We conclude this is constitutionally permissible.

*Accord, In re L.L.,* 715 P.2d 334, 336 (Colo. 1986).

Noting that there is

no intimation in *Santosky* that the factual foundation for the requisite adjudication of abuse or neglect [which provides the foundation for the termination of parental rights] must be proved by clear and convincing evidence.

*In re A.M.D., supra* at 636, the Colorado court arrived at its conclusion after applying the same test applied by the *Santosky* Court—the fundamental fairness 3–factor balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). The three factors which must be balanced to determine the nature of the process due in parental rights termination proceedings are

the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure.

*Santosky v. Kramer,* 455 U.S. at 754. *See In re Chubb,* 46 Wn. App. 530, 533–34, 731 P.2d 537 (1987).

In applying the balancing test to the question before it, the Colorado Supreme Court noted that the private interest affected in a parental rights termination proceeding, which is commanding, weighs against the use of the preponderance of the evidence standard at any necessary step in such a proceeding. However, in considering the second factor, the risk of error from using a preponderance standard, the court concluded that the increased risk of the erroneous termination of parental rights by using a preponderance standard in adjudicating dependency is minimal at most. *In re A.M.D., supra* at 636–37; *In re Chubb, supra* at 535.

In explaining its conclusion, the court examined and compared the Colorado statutory criteria for establishing dependency or neglect with the termination standards

which, the court held, must be proven by clear and convincing evidence, and noted that it is difficult to conceive of any set of circumstances under which the parental rights termination standards would be met and yet the criteria for adjudicating a child as neglected or dependent would not also be satisfied. *In re A.M.D., supra* at 637–38.

Finally, the Colorado court concluded that the State had a substantial interest in maintaining a preponderance standard at dependency or neglect adjudicatory hearings since the primary purpose of such proceedings is to help preserve and mend familial ties through State intervention, and heightening the standard of proof would tend to cast the State in the role of an adversary to the parents in an effort to gather and present evidence to meet the elevated standard, contrary to its legislatively contemplated role as a helping intervenor. *In re A.M.D.,* at 639–40; *see In re Chubb, supra* at 535–36.

In concluding that the establishment of the underlying dependency determination by a preponderance of the evidence accords the parties to a parental rights termination proceeding due process of law, the Colorado Supreme Court stated that under the balancing test as applied to the Colorado statutes, the private interest affected is fully protected, the risk of error in factfinding is not appreciably increased, and the substantial governmental interest in helping families with dependent children address the causes of dependency is advanced. *In re A.M.D., supra* at 640–41; *In re O.E.P.,* 654 P.2d 312, 316 (Colo. 1982).

Similarly, when the 3–factor balancing test is applied to the Washington parental rights termination statutory scheme, the prior dependency determination by a preponderance of the evidence does not violate the due process rights of the parties to a termination proceeding.[3]

---

[3]Recently we upheld the preponderance of the evidence standard for the initial dependency determination in the face of a due process challenge after balancing the three factors set forth in *Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). *In re Chubb,* 46 Wn. App. 530, 537, 731 P.2d 537 (1987).

First, as pointed out by the Colorado Supreme Court, the private interest affected in a parental rights termination proceeding, which is weighty, militates against the use of the preponderance standard at the dependency proceeding. *In re A.M.D., supra* at 636–37.

However, under the Washington statutory scheme the private interest is adequately protected since the prior dependency determination can ripen into an order terminating parental rights only upon clear and convincing evidence of the termination standards. *See In re Chubb, supra* at 536. Moreover, as discussed below, in Washington as in Colorado, proof by clear and convincing evidence of the termination standards necessarily incorporates such proof of parental unfitness and the child's dependency. *See In re A.M.D., supra* at 638–39. Thus the second factor—the risk of error in factfinding at the termination proceeding stemming from using the preponderance of the evidence standard at the dependency adjudication—is insubstantial.

Under RCW 13.34.190 before parental rights are terminated, the court must find that the termination standards, the first six RCW 13.34.180 allegations, are established by clear, cogent and convincing evidence and that termination is in the child's best interests. *In re Esgate,* 99 Wn.2d 210, 212, 660 P.2d 758 (1983); *In re Churape,* 43 Wn. App. 634, 636, 638–39, 719 P.2d 127 (1986).

These six facts must be alleged and proved in a termination hearing:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]

RCW 13.34.180(1)–(6); *In re Hall,* 99 Wn.2d 842, 849, 664 P.2d 1245 (1983).

The RCW 13.34.180(1) allegation is that the child has been found to be dependent under RCW 13.34.030(2), which defines a dependent child:

(2) "Dependent child" means any child:

(a) Who has been abandoned; that is, where the child's parent, guardian, or other custodian has evidenced either by statement or conduct, a settled intent to forego, for an extended period, all parental rights or all parental responsibilities despite an ability to do so;

(b) Who is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child;

(c) Who has no parent, guardian, or custodian willing and capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development; or

(d) Who is developmentally disabled, as defined in RCW 71.20.016 and whose parent, guardian, or legal custodian together with the department determines that services appropriate to the child's needs can not be provided in the home. However, (a), (b), and (c) of this subsection may still be applied if other reasons for removal of the child from the home exist.

*See In re Dodge,* 29 Wn. App. 486, 489, 628 P.2d 1343 (1981).

Dependency under RCW 13.34.030(2) need be proven by a mere preponderance of the evidence. RCW 13.34.130; *In re Chubb, supra* at 537. However, a prior dependency finding is only one factor to be considered in determining whether to deprive a parent of all parental rights. *In re Fisher,* 31 Wn. App. 550, 552, 643 P.2d 887 (1982); *In re Dodge, supra* at 493; *see* RCW 13.34.180. Other RCW 13.34.180 allegations which must be proven by clear and

convincing evidence are that the parent was offered or provided reasonably available necessary services capable of correcting the parental deficiencies within the foreseeable future and that it is unlikely that conditions will be remedied so that the child can be returned to the parent in the near future. RCW 13.34.180(4), (5); *In re Hall, supra* at 850–51.

The Washington parental rights termination statutes require clear, cogent and convincing evidence of not only a prior determination that the parent has fallen below minimal standards, RCW 13.34.180(1), but of the fact that parental deficiencies still exist which are not likely to be remedied so that the child can be returned to the parent in the near future, RCW 13.34.180(5). *In re Hall, supra* at 848. The termination decision must be predicated upon present parental unfitness. *In re Moseley,* 34 Wn. App. 179, 186–87 & n.4, 660 P.2d 315, *review denied,* 99 Wn.2d 1018 (1983).

While the Colorado parental rights termination statute explicitly requires a finding of parental unfitness, *In re A.M.D., supra* at 637, Washington's statute implicitly requires such a finding. Even after the entry of a dependency order, if a parent is not shown to be unfit at the time of the parental rights termination proceeding, termination is improper. In *In re Churape, supra* at 635, 638–39, this court reversed a parental rights termination order and remanded the case for the taking of additional testimony where the record clearly established the presence of serious deficiencies during the dependencies but also revealed strong evidence that they had been remedied by the time of the termination proceeding.

Moreover, proof of present parental unfitness necessarily entails proof of the child's dependency under RCW 13.34-.030(2) since the dependency criteria are the only statutory measuring sticks of parental deficiencies.[4] Once a child has been found to be dependent, a finding that it is unlikely

---

[4]In the present case the trial court made the following finding, which corresponds to a dependency criterion, RCW 13.34.030(2)(c):

that conditions will be remedied so that the child can be returned in the near future, RCW 13.34.180(5), is the substantial equivalent of a finding that circumstances are such that returning the child to the parent would place him in danger of substantial damage to his psychological or physical development, RCW 13.34.030(2)(c). Since the RCW 13.34.180 allegations, Washington's parental rights termination standards, must be proven by clear and convincing evidence, dependency similarly must be proven by clear and convincing evidence at the termination hearing. *In re A.M.D., supra* at 638–39, cited in *In re Chubb, supra* at 535.

At the time of the termination proceeding,

> whether the facts supporting the original dependency or neglect proceeding were accurately found is largely a question of historical interest. The consideration of overriding importance is whether at the time of the termination proceeding severance of the parent–child ties is appropriate.

*In re A.M.D., supra* at 639. Thus at the time of the termination hearing the accuracy of the facts underlying the original dependency adjudication is not critical, and the risk of error in finding the underlying facts at the termination hearing is not of central importance. *In re A.M.D., supra.*

The last factor in the balancing test is the governmental interest in maintaining the preponderance of the evidence standard at dependency adjudications. Two State interests in termination proceedings are a parens patriae interest in promoting the child's welfare and a fiscal and administrative interest in reducing the costs and burden of such proceedings. The Court in *Santosky v. Kramer,* 455 U.S. at 766, stated that a higher standard of proof than a prepon-

---

The clear, cogent and convincing weight of evidence is that [the mother] will suffer [similar] episodes in the future and when she does, she will be an extreme danger to her children.

Finding of fact 6.

It is preferable that an express finding of present unfitness corresponding to a dependency criterion be made. In the absence of such a finding, the record must reveal clear, cogent and convincing evidence of present parental unfitness.

derance of the evidence is consistent with both interests. *See In re Chubb, supra* at 534. However, in *In re A.M.D., supra* at 639, the Colorado Supreme Court stated that the governmental interests in favoring a preponderance standard, as reflected in the State's statutory scheme, are more weighty. *In re Chubb, supra* at 535.

The Washington statutory scheme is like Colorado's in that a dependency order vests the court with extensive dispositional remedies to attempt to alleviate existing problems that have required State intervention, RCW 13.34.130, toward the end of keeping the family unit intact, RCW 13.34.020. *In re Churape, supra; cf. In re A.M.D., supra* at 639–40.

Once a child has been found to be dependent, the court may order a program including parental aid to alleviate any danger to the child and mitigate any damage already suffered by the child while the child remains with the parents, RCW 13.34.130(1)(a), or the court may order that custody be placed in a relative, the Department of Social and Health Services, or a licensed child–placing agency, RCW 13.34.130(1)(b), with the responsible agency providing the court with a specific plan detailing what steps will be taken to return the child home, including what services will be offered to the parents, and what actions will be taken to maintain the parent–child ties, RCW 13.34.130(2).

The status of a dependent child is to be reviewed at a hearing held at least every 6 months to determine whether court supervision should continue and whether the child should be returned home, RCW 13.34.130(3)(a) and (b). The filing of a petition seeking termination of the parent–child relation may be ordered, RCW 13.34.130(3), but only where the remedial efforts have been unsuccessful in curing parental deficiencies such that the circumstances in the home still pose a threat to the child's welfare and development, *see, e.g., In re Moseley, supra* at 186.

Since an elevated standard of proof at dependency adjudications would undermine the State's role as helping intervenor toward the end of keeping the family unit intact and would tend to cast the State in an adversarial role to

obtain the necessary evidence to meet the higher standard of proof, Washington, like Colorado, has a substantial interest in maintaining the preponderance of the evidence standard at dependency hearings. *See In re Chubb, supra* at 537; *In re A.M.D., supra* at 640.

Applying the balancing test to Washington's parental rights termination statutory scheme, we conclude that prior dependency adjudications based upon the preponderance of the evidence comport with the due process rights of the parties to a termination proceeding. The private interest is fully protected, the increased risk of error in factfinding is insignificant, and the substantial governmental interest in intervening to provide necessary remedial assistance is promoted. *In re A.M.D., supra* at 640–41.

SUFFICIENCY OF THE EVIDENCE

RCW 13.34.190 provides in part:

After hearings pursuant to RCW 13.34.110, the court may enter an order terminating all parental rights to a child if the court finds that:

(1)(a) The allegations contained in the petition as provided in RCW 13.34.180 (1) through (6) are established by clear, cogent, and convincing evidence; . . . and

(2) Such an order is in the best interests of the child.

*See In re Churape,* 43 Wn. App. 634, 636, 638–39, 719 P.2d 127 (1986).

Krause claims that the termination order is not supported by clear, cogent and convincing evidence and presents arguments in support of her assignments of error as to these portions of the following trial court's findings:[5]

VI.

The clear, cogent and convincing weight of [the] evidence is that she will suffer those episodes in the future

---

[5]The challenged findings of fact are virtually identical in both children's termination proceedings. Finding of fact 10 is identical in both proceedings with the exception of the different alleged fathers' names.

Krause has set forth several challenged findings in full; however, she cites in support of her own position facts in some of the challenged findings and presents arguments as to only the above portions of the findings, RAP 10.3(a)(5); *Lassila v. Wenatchee,* 89 Wn.2d 804, 809, 576 P.2d 54 (1978).

and when she does, she will be an extreme danger to her children.

VII.

In July of 1984, the mother married Steven Krause, who has been hospitalized thirteen times for paranoid schizophrenia. While he has improved dramatically because of adherence to medication, there is some likelihood that if he goes off medication, he will be an extreme danger to everyone in his household.

IX.

There is little likelihood that the conditions which led to the child's removal will be remedied so that the child can be returned to her in the reasonably foreseeable future.

X.

It would be in the best interests of the minor child and it would be the least detrimental alternative for the permanent placement of said child that Agnes Jean Sneddon, now Agnes Jean Krause, the mother, and the alleged father, Douglas Penrod [Daniel O'Leary,] or any other person claiming a paternal interest in the child above named be deprived of all parental rights and interest that they might have in and to the minor child and the minor child should be placed in the permanent custody of Catholic Community Services of Seattle/King County with full authority in that agency to place said child in a fit and proper adoptive home.

▮ Clear, cogent and convincing evidence must support an order terminating parental rights. That is, the ultimate fact in issue must be shown to be "highly probable." Thus the question is whether substantial evidence supports the challenged findings of fact in light of the "highly probable" test. *In re Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984); *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973).

Findings of fact 6 and 9 are directly related to the RCW 13.34.180(5) allegation. The "episodes" which in finding of fact 6 the court found by clear, cogent and convincing evidence that Krause will suffer in the future, when she will be an "extreme danger" to her children, refer to the description in the unchallenged portion of the same finding:

> The mother suffers from a serious bipolar affective disorder known as manic–depressive illness, with acute manic phases. In the past four years, she has been hospitalized at least four times for acute psychotic episodes. While she is undergoing a psychotic episode, she exhibits extreme and rather bizarre behavior, shows an extreme lack of judgment and is very disoriented and impulsive.
>
> A personality disorder prevents her from having insight into her illness and she is therefore unaware of her behavior during manic episodes. Although the mother has been relatively stable since the summer of 1983, she has had giddy episodes which resulted in a loss of judgment in her supervision of Teddy O'Leary, her son.

Krause argues that the challenged portion of finding of fact 6 is unsupported by the requisite quantum of evidence since there was conflicting expert testimony as to the likelihood of her having a recurrence of manic episodes. Consequently, she argues, the evidence does not support finding of fact 9 that there is little likelihood that the conditions which led to the children's removal will be remedied so that the children can be returned to her in the reasonably foreseeable future, *see* RCW 13.34.180(5).

However, despite Krause's treating psychiatrist's testimony that her manic episodes had only a small chance of recurring, there was contrary expert testimony. The appellate court is not allowed to second guess the trial court and weigh either the evidence or the credibility of witnesses. *In re Pawling, supra* at 401.

Further, the recommendations of three expert witnesses that Krause's parental rights in the two children be terminated were not based solely upon her manic–depressive illness but upon her underlying personality disorder coupled with the illness. Her personality disorder involved a denial of her mental problems and a lack of insight into the manifestation of her illness so that she failed to seek help upon the onset of a manic episode. Dr. Grant, who had seen her prior to the manic episode which resulted in her commitment to Harborview Medical Center and who had told her

to contact him if she had any problems, emphasized that Krause failed to even try to contact him when she had the manic episode during which she placed Teddy in great danger.

Substantial evidence supports findings of fact 6 and 9 in light of the "highly probable" test. Further, such evidence supports finding of fact 10 that termination is in the children's best interests, RCW 13.34.190(2); *In re Churape, supra* at 636. *In re Pawling, supra.* On occasion, less drastic alternatives than termination are appropriate, as Krause argues. However, such is not the case where the termination of parental rights is in the children's best interests, as determined by the trial court in this case. *In re Pawling, supra.*

Finding of fact 7 regarding Krause's husband is supported by the requisite substantial evidence. Krause argues that consideration of her husband's psychiatric history was improper since he is not a party to the proceedings and has no parental rights. This alleged error was not preserved for appeal by a proper objection raised at trial. *Smith v. Shannon,* 100 Wn.2d 26, 37, 666 Wn.2d 351 (1983). Even if this alleged error was not waived, assuming that the Krauses will be living in the same household, evidence of Krause's husband's mental problems is relevant to a finding of the RCW 13.34.180(6) allegation that continuing the parent–child relation diminishes the children's prospects for early integration into a stable and permanent home.

Krause challenges for the first time on appeal Catholic Community Services' standing to bring a parental rights termination action. A standing issue which is not submitted to the trial court may not be considered on appeal.[6] *Baker v. Baker,* 91 Wn.2d 482, 484, 588 P.2d 1164 (1979).

---

[6]The concurring opinion in *In re Kevin L.,* 45 Wn. App. 489, 494, 726 P.2d 479 (1986), which Krause cites, is distinguishable in that in *Kevin,* unlike in the instant case, the respondent agency stipulated to waive its objection to appellate review during oral argument. Moreover, the concurring opinion's discussion of standing is dicta.

The termination orders are affirmed.

COLEMAN and GROSSE, JJ., concur.

Review denied by Supreme Court September 1, 1987.