[Nos. 44281-3-I; 44133-7-I.   Division One.   April 24, 2000.]

*In the Matter of the Dependency of* A.S.
THE STATE OF WASHINGTON, *Respondent*, v. AZIZ SAFOUANE, ET AL., *Appellants*.
*In the Matter of the Welfare of* A.S.
THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*, v. SARAH SAFOUANE, ET AL., *Respondents*.

*Aziz* and *Sarah Safouane*, pro se.

*Marilyn R. Gunther*, for the Safouanes.

*Christine O. Gregoire, Attorney General*, and *Noella A. Rawlings, Christine L. Currie*, and *Joel J. Delman, Assistants*, for the State.

BAKER, J. — Following the death of their 22-month-old son Mohammed, the Safouanes' four remaining children and a later born child were found dependent. The Safouanes' parental rights were later terminated as to each child after they refused to participate in court-ordered services and refused to visit their children in foster care. The Safouanes then had a seventh child, A.S., who is the subject of this appeal. A.S. was found dependent. The Safouanes appeal pro se from the dependency disposition order. In a later proceeding, the State's termination petition was dismissed on the grounds that the State had failed to prove the facts underlying the dependency by clear, cogent and convincing evidence. The Department of Social and Health Services (DSHS) appeals the dismissal of the termination petition.

We affirm the dependency disposition order. Because the State is not required to relitigate the facts underlying the dependency, we reverse the order dismissing the termination petition and grant the termination petition.

## I

Aziz and Sarah Safouane's youngest child, 22-month-old Mohammed Safouane, died as a result of a blunt trauma to his abdomen. Two of his older siblings told law enforcement officers that Mohammed had been "disciplined" and "stomped" by his father and had vomited "blood and stuff." Mohammed's four older siblings were removed from the Safouanes' custody and DSHS initiated dependency proceedings. In addition, Aziz Safouane was charged with homicide. However, the charges were dismissed without prejudice following a ruling that the children's hearsay testimony was inadmissible under the excited utterance exception.

At the dependency trial before Judge Deborah Fleck, the

Safouanes claimed that Mohammed sustained his injuries in a bicycle accident, and they presented an expert medical witness who supported that theory. DSHS presented expert medical witnesses who testified that the injury was caused by an intentionally inflicted blow to the abdomen, not a bicycle accident, and that Mohammed could have survived his injury had he received prompt medical attention.

Judge Fleck entered an order finding the four surviving children dependent pursuant to RCW 13.34.030(4)(c).[1] The court found that the bicycle accident theory was not plausible, and that the injury to Mohammed was inflicted, rather than accidental. Despite the criminal court's order suppressing the hearsay evidence, Judge Fleck ruled that she could consider the children's statements as excited utterances, and based thereon, found that the father inflicted the blow. The court found the children dependent as to their father because he inflicted the blow and because Mohammed exhibited sufficient signs and symptoms to alert the father that immediate medical treatment was required, but he failed to seek treatment until Mohammed was in extremis. The court found the children dependent as to their mother because her adherence to the implausible bike accident theory showed that her desire to have her family together overrode her ability to protect her children.

The court ordered that both parents undergo psychological evaluations, that the children be returned to the mother subject to ongoing monitoring by DSHS, and that the father move out of the family home. The court entered a no-contact/restraining order as to the father, with the exception of supervised visits with the children. The court also established a community support panel consisting of four members, including at least one member of the parents' Muslim faith, to serve in an advisory capacity to the court

---

[1] A child is found dependent under RCW 13.34.030(4)(c) if the child "has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

and to assist the family in accessing services and complying with the court order.

The parents appealed the dependency and disposition orders. We held that the children's statements were not admissible as excited utterances, but found the error harmless because medical evidence indicated that Mohammed died from an inflicted blow rather than a bicycle accident, and the hearsay evidence had been used solely to establish that the father, rather than the mother, inflicted the blow.[2]

The Safouanes refused to comply with the dispositional plan. At a dependency review hearing, Judge Fleck ruled that continuing noncompliance would result in the children's removal from the mother's home and possible termination of parental rights. The parents still refused to comply, and Judge Fleck ordered the four children removed from the mother's home and returned to foster care

Several months later, a sixth child was born to the Safouanes. DSHS filed a dependency petition, citing Judge Fleck's findings that Mohammed's death was the result of abuse. The child was removed from the Safouanes' home, and after a hearing, the court found the sixth child dependent. The disposition order was similar to Judge Fleck's, but did not require that the parents submit to psychological evaluations and would permit return of the child if the parents visited him in foster care. However, the Safouanes refused to visit any of their children in foster care and refused all court-ordered services. DSHS filed termination petitions, and after a trial, the court terminated the Safouanes' parental rights to all five of their children. The Safouanes appealed, and we upheld the termination orders.[3]

A.S., the Safouanes' seventh child and the subject of this appeal, was born during the termination trial. DSHS filed a

---

[2] *In re the Dependency of M.I.S.*, 1997 Wn. App. LEXIS 1251, No. 36743-9-I, 1997 WL 435887 (Wn. App. Aug. 4 1997), *review denied*, 134 Wn.2d 1003, 953 P.2d 96, *cert. denied, Safouane v. Washington State Dep't of Soc. & Health Servs.*, 525 U.S. 887, 119 S. Ct. 202, 142 L. Ed. 2d 166 (1998).

[3] *In re the Welfare of M.I.S.*, No. 41000-8-1 (Wash. Ct. App. May 24, 1999).

dependency petition almost immediately after her birth. At a 72-hour shelter care hearing, the juvenile court commissioner denied DSHS's request to have A.S. placed in foster care, but issued a shelter care order that would allow A.S. to remain with her parents subject to extensive monitoring and other conditions designed to ensure her safety. At the 30-day shelter care hearing, the commissioner set additional conditions, including psychological evaluations, and specified that A.S. would be removed if the parents did not comply. The Safouanes refused to comply with the orders, and A.S. was removed from their home without notice pursuant to a writ of habeas corpus. The Safouanes have steadfastly refused to visit A.S. in foster care ever since.

At the fact-finding dependency trial before Judge LeRoy McCullough, DSHS offered into evidence all trial court and Court of Appeals decisions regarding the previous dependency and termination proceedings. DSHS presented this evidence to demonstrate that Mohammed had died of an inflicted blow, that timely medical care could have saved him, and that the circumstances surrounding the death had not changed because the Safouanes had refused to comply with court orders. The Safouanes countered with evidence that A.S. was not presently suffering from abuse or neglect. The Safouanes continued to maintain that they were completely innocent of any wrongdoing in Mohammed's death; that following the court's orders would be a dishonor to their children and the Muslim community because the orders would force them to take actions inconsistent with their belief in their innocence; and insisted that visitation was unnecessary because nothing could violate the sacred bond they had with their children.

The court found A.S. dependent. The court acknowledged that there was no evidence that A.S. was currently being abused, but found that the parents' continuous refusal to comply with court orders meant that there was no substantial change since the original dependency action and that the parental deficiencies remained. The court also relied on Judge Fleck's findings in the dependency of A.S.'s older

siblings regarding the facts surrounding the death of Mohammed and the risks to the children. The court ordered that A.S. remain in foster care and that the parents visit her at least twice a week to reestablish the parent-child bond. The court also ordered psychological evaluations for the Safouanes and ordered them to accept treatment if recommended. The court stated its willingness to return A.S. to her parents, but ordered that DSHS would be relieved of its burden to provide services if the parents refused to comply within 30 days of the order. The Safouanes refused to comply, and now appeal the dependency order.

DSHS petitioned to terminate parental rights to A.S., and a trial was held before Judge Dale Ramerman. At the trial, DSHS did not attempt to reprove the facts underlying Mohammed's death by clear, cogent and convincing evidence. Instead, as in the termination trial for the older children, DSHS offered into evidence copies of prior court orders in the dependency and termination cases involving A.S. and her older siblings. The court admitted this evidence with the caveat that it was not ruling on what collateral effect, if any, those orders would be given. DSHS also offered testimony that the Safouanes' total refusal to comply with court orders and continuing claims that they were in no way responsible for the death of Mohammed indicated that the underlying parental deficiencies have not been corrected. The Safouanes continued to base their refusal to engage in court-ordered services or visitation on their innocence in the death of Mohammed and their religious and legal rights.

The trial court found that DSHS had offered all ordered services; that the parents' willful decision not to visit A.S. had adversely affected the parent-child bond; that the parents had refused to engage in psychological evaluations as ordered; that the Safouanes' religious beliefs are sincere; and that protection of children is a compelling state interest. However, the court held that it could not apply collateral estoppel to Judge Fleck's findings regarding the cir-

cumstances of Mohammed's death because the State's burden of proof at a dependency hearing is preponderance of the evidence, but in a termination proceeding the burden of proof is clear, cogent and convincing evidence. Therefore, the court held that DSHS was required to reprove the facts underlying the dependency—the circumstances of Mohammed's death—by clear, cogent, and convincing evidence. The court found that without evidence of the cause of Mohammed's death, it could not determine whether there were any parental deficiencies. Thus, the court dismissed the termination petition.

DSHS appeals the dismissal of the petition for termination of the Safouanes' parental rights to A.S.

## II

## TERMINATION PROCEEDINGS

DSHS argues that the trial court erred in dismissing its termination petition for A.S. because RCW 13.34.180 does not require it to prove the underlying facts in the dependency by clear, cogent and convincing evidence.

In order to terminate parental rights, DSHS must prove the first six elements of RCW 13.34.180 by clear, cogent and convincing evidence:

(1) That the child has been found to be a dependent child under RCW 13.34.030(4); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(4); and

(4) That the services ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided; and

    (5)    That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . .

    (6)    That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home; . . .

In addition, DSHS must prove by a preponderance of the evidence that termination is in the child's best interests.[4]

At the termination trial, DSHS did not seek to again prove the facts underlying the dependency—specifically, the matter of Mohammed's death—this time by clear, cogent and convincing evidence. Instead, DSHS entered prior court orders into evidence, including Judge Fleck's findings of fact at the older siblings' dependency trial that Mohammed had died from abuse and not a bicycle accident. DSHS's witnesses testified that the Safouanes continually refused to engage in court-ordered services, that DSHS could not offer services to remedy the Safouanes' underlying parental deficiencies as long as the Safouanes refused to participate in psychological evaluations, and that A.S.'s safety could not be guaranteed as long as the parental deficiencies were not remedied. The Safouanes do not deny their refusal to engage in court-ordered services, but contend that the psychological evaluations are merely a subterfuge to force a confession and that their religion forbids them from taking any action inconsistent with their belief in their own innocence.

The trial court found that DSHS had proved the elements of RCW 13.34.180(1), (2), and (3) by clear, cogent and convincing evidence, and these are not at issue here. The court found that all services ordered under RCW 13.34.130 had been expressly offered or provided, that the Safouanes had willfully refused to visit their children, and that this adversely affected the relationship between A.S. and her parents. The court also found that the Safouanes' religious

---

[4] RCW 13.34.190.

beliefs were sincere, and ruled that protection of children is a compelling state interest.

However, the court refused to apply collateral estoppel based on the findings from the prior dependency proceedings because those findings were required to be proved only by a preponderance of the evidence, whereas the standard of proof at a termination proceeding is clear, cogent and convincing evidence. Therefore, the court held that the findings of fact in the prior dependency proceedings were not admissible as evidence concerning the underlying issues of fact in this case.

Based on the higher standard of proof, the court held that DSHS was required to prove the facts underlying the dependency by clear, cogent and convincing evidence, which it had failed to do. The court stated that without admissible evidence about the cause of Mohammed's death, it could not determine whether parental deficiencies existed, and without such evidence on that "linchpin issue," it could not determine whether the requirements of RCW 13.34.180(4), (5), and (6) had been met. Therefore, the court dismissed the termination petition.

■ The court acknowledged that in *In re Dependency of K.R.*,[5] the Washington Supreme Court held that RCW 13.34.180 does not require relitigation of the dependency determination under the clear, cogent and convincing standard. However, the trial court reasoned that *K.R.* is factually distinguishable because in *K.R.* the court heard substantial testimony about the alleged deficiency and the failure of the mother to complete therapy, whereas here DSHS's sole evidence in support of termination was that the Safouanes had failed to engage in court-ordered services or to visit A.S. The trial court stated that "*K.R.* must be read to require the court in a termination proceeding to consider the evidence and make findings about current parental unfitness. The court could not have meant that the court can terminate parental rights without considering

[5] 128 Wn.2d 129, 904 P.2d 1132 (1995).

any evidence on that issue." Thus, because the underlying issue is the manner of Mohammed's death, and because DSHS presented no evidence on that issue (other than the findings of fact in the underlying dependency order), the court dismissed the termination petition.

Because the Washington Supreme Court has already ruled on the precise issue in *K.R.*, our task is to determine whether or not the trial court misconstrued the holding of *K.R.* K.R.'s dependency was based on a finding of sexual abuse by the mother. There was conflicting testimony at the termination trial regarding whether the mother had sexually abused K.R. There was also extensive testimony that K.R.'s parents had failed to successfully participate in or complete treatment as ordered.[6] The trial court found that K.R. had been abused based on res judicata.[7] The court terminated parental rights to K.R., finding that the parents had failed to complete treatment and that there was little likelihood that conditions would be remedied.[8] The Court of Appeals held that this was insufficient, and reversed the trial court.[9] The Washington Supreme Court reversed the Court of Appeals, stating that:

> The statute does not require relitigation of the dependency determination. Further, no explicit finding of current parental unfitness is required. However, if the State proves the allegations set out above [RCW 13.34.180(1)-(6)], an implicit finding of current parental unfitness has been made. *Krause v. Catholic Community Servs.*, 47 Wn. App. 734, 742, 737 P.2d 280, *review denied*, 108 Wn.2d 1035 (1987). Because the termination statute requires proof by clear, cogent, and convincing evidence, which necessarily and implicitly includes evidence of current parental unfitness, it comports with the constitutional due process requirement that unfitness be established by clear,

---

[6] *K.R.*, 128 Wn.2d at 137-38.

[7] *In re Dependency of K.R.*, 75 Wn. App. 781, 790, 880 P.2d 88 (1994), *rev'd*, 128 Wn.2d 129, 904 P.2d 1132 (1995).

[8] *K.R.*, 128 Wn.2d at 139.

[9] K.R., 75 Wn. App. at 792.

cogent, and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).[10]

DSHS argues that the trial court misinterpreted *K.R.* According to DSHS, *K.R.* and its progeny unequivocally hold that RCW 13.34.180 does not require it to relitigate the underlying facts of the dependency and establish them by clear, cogent and convincing evidence at the time of the termination proceedings. DSHS argues that the focus at termination is on the services offered or provided to the parents to correct the previously identified deficiencies:

> It is not necessary to reestablish the original dependency at termination. *In re Dependency of J.C.*, 130 Wn.2d 418, 428, 924 P.2d 21 (1996). The review process results in repeated, updated findings of the dependency. . . .
>
> For this reason, termination proceedings are not a relitigation of the dependency issues, and the accuracy of the facts underlying the original dependency adjudication is not deemed critical. *Krause*, 47 Wn. App. at 743. The issue at termination is current unfitness. *In re Dependency of K.R.*, 128 Wn.2d 129, 142, 904 P.2d 1132 (1995). If the elements of RCW 13.34.180 are proved, current parental unfitness is implicitly established.[11]

DSHS is correct. The *K.R.* court used broad and definitive language in reaching its conclusion that DSHS is not required to reestablish the facts underlying the dependency.[12] The court noted its concern with the use of res judicata in finding that K.R. was abused, but specified that the statute did not require relitigation of the abuse issue and that the trial court had not based its findings of fact regarding RCW 13.34.180 on res judicata.[13] The court stated that "the focus of [RCW 13.34.180(5)] is whether parental deficiencies have been corrected" and discussed

---

[10] *K.R.*, 128 Wn.2d at 141-42.

[11] *In re Welfare of H.S.*, 94 Wn. App. 511, 523, 973 P.2d 474, *review denied*, 138 Wn.2d 1019, 989 P.2d 1140 (1999).

[12] *K.R.*, 128 Wn.2d at 141-42.

[13] *K.R.*, 128 Wn.2d at 145.

the failure of the parties to complete treatment programs.[14] The court did not focus on whether the underlying deficiencies actually occurred as proved at the dependency trial, and it did not require DSHS to prove again the underlying parental deficiencies. Rather, the court stated that an implicit finding of current parental unfitness has been made when DSHS proves the elements of RCW 13.34.180 at the termination trial. Here, although the trial court properly held that collateral estoppel did not apply, the trial court erred in requiring DSHS to relitigate the facts of Mohammed's death at the termination trial because such an explicit finding was not required.

█ It is interesting to note that the trial court's interpretation of *K.R.* mirrors that of the *K.R.* dissent. In a strongly worded dissent, Justice Johnson stated that:

> the majority defines unfitness as failure to remedy conditions, and then requires clear and convincing proof only of "failure to remedy" and no additional proof whatsoever of "conditions." I dissent because I believe adherence to the constitution requires more than clever word play.[15]

Of course, neither the trial court nor this court is free to adopt the dissent's point of view.

█ Under RAP 12.2, appellate courts are authorized to affirm, modify or reverse a trial court order without further proceedings, when doing so would be a useless act or a waste of judicial resources.[16] Here, the trial court erred as a matter of law when it required DSHS to relitigate the facts underlying the dependency. There is no additional evidence to be presented. Therefore, we will review the trial court's findings in order to determine whether the Safouanes' parental rights should be terminated without further proceedings.

█ In order to terminate parental rights, DSHS must

---

[14] *K.R.*, 128 Wn.2d at 144.

[15] *K.R.*, 128 Wn.2d at 148.

[16] *Radach v. Gunderson*, 39 Wn. App. 392, 401, 695 P.2d 128 (1985); *Jaramillo v. Morris*, 50 Wn. App. 822, 833, 750 P.2d 1301 (1988).

prove the elements of RCW 13.34.180 by clear, cogent and convincing evidence, as well as proving that termination is in the child's best interests by a preponderance of the evidence under RCW 13.34.190. The trial court held that DSHS had proved the elements of RCW 13.34.180(1), (2), and (3), so we need determine only whether DSHS proved the remaining elements. The court's finding that DSHS had not proved the remaining elements was based solely on its erroneous conclusion that DSHS was required to re-prove Mohammed's cause of death at the termination trial. Thus, we must determine whether there was sufficient evidence to determine that DSHS has proved the remaining elements under the proper standard.

▮▮ RCW 13.34.180(4) requires DSHS to prove

That the services ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided.

DSHS provided ample evidence of the services it had offered, and the trial court entered a finding of fact that all services ordered under RCW 13.34.130 have been expressly and understandably offered or provided.

RCW 13.34.180(5) requires DSHS to prove "[t]hat there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . ." DSHS presented ample evidence that the Safouanes have steadfastly refused to engage in court-ordered services or to visit A.S. in foster care, and the findings of fact reflect this evidence.

RCW 13.34.180(6) requires DSHS to prove that "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." Given the trial court's finding that the Safouanes have willfully refused to visit A.S. in foster care, that this refusal has adversely affected the parent-child bond, and that the Safouanes have refused to

participate in court-ordered services, it is clear that A.S. has nothing to gain from continuation of the parent-child relationship.

RCW 13.34.190(2) requires DSHS to prove by a preponderance that termination of parental rights is in A.S.'s best interest. A.S. has been in foster care for most of her life, and she cannot be adopted until parental rights are terminated. The older she gets, the less likely she is to be adopted. There is no indication that the Safouanes are going to change their stance.

In summary, there is ample evidence to find that DSHS proved all of the elements of RCW 13.34.180, as well as RCW 13.34.190. Therefore, we grant DSHS's petition terminating the Safouanes' parental rights to A.S.

Lastly, the Safouanes move to strike two statements in the State's opening brief, arguing that the statements contain material not supported by the record.[17] First, the State refers to the Safouanes' eighth child who was born after the proceedings in this matter and who is the subject of dependency proceedings. However, the Safouanes refer to the same child in their own brief. Therefore, the Safouanes have waived their right to object to this reference. Second, the Safouanes object to the State's attachment of this court's unpublished opinion upholding termination of the Safouanes' parental rights to their oldest five children. The Safouanes' argument is not persuasive. The fact that the Safouanes' parental rights to those children were terminated was in the record before the trial court. Furthermore, the State did not reference the unpublished opinion for the purpose of submitting additional evidence in support of termination that was not in the record before the trial court, but rather to advise this court of the current status of that appeal. The references need not be stricken.

In conclusion, we affirm the dependency order, and we reverse the dismissal of the termination petition and grant the termination petition.

---

[17] *Nelson v. McGoldrick,* 127 Wn.2d 124, 141, 896 P.2d 1258 (1995).

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KENNEDY and ELLINGTON, JJ., concur.

Review denied at 141 Wn.2d 1030 (2000).