[Nos. 31691-5-I; 31692-3-I.   Division One.   July 12, 1993.]

*In the Matter of the Dependency of* H.W., ET AL.

BRIAN WILLIAMS, *Petitioner,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Timothy Sell* and *Nancy Sapiro* of *The Defender Association,* for petitioner.

*Christine O. Gregoire, Attorney General,* and *Linda Wilgis, Assistant,* for respondent.

PER CURIAM. — Brian Williams seeks discretionary review of a superior court order requiring his two minor children to remain in shelter care. Pursuant to RAP 18.12, the matter was referred to a panel of this court for possible accelerated review.

During the pendency of this case, Mr. Williams filed a motion for expenditure of public funds. The Supreme Court determined that Mr. Williams was not entitled to review at public expense and denied his motion on March 4, 1993. Mr. Williams has since filed a "Motion to Waive Costs and Appoint Counsel at Public Expense". In view of the March 4 order issued by the Supreme Court, Mr. Williams' request for appointment of counsel at public expense is denied. We nevertheless waive payment of the filing fee in this court due to the particular circumstances of this case and the significant rights involved.

*See O'Connor v. Matzdorff,* 76 Wn.2d 589, 458 P.2d 154 (1969). We further grant the motion for discretionary review under RAP 2.3(b), accelerate review, and affirm.

## I

Brian Williams and his wife have two children, C.W., born February 20, 1985, and H.W., born April 14, 1986. On October 22, 1992, Cherry Valley Elementary School notified Child Protective Services that C.W. reported his mother had threatened both him and his father. Following an investigation in which police received signed written statements from three unidentified witnesses, the children were picked up by officers of the Carnation and Duvall Police Departments on October 30, 1992. The children were placed in protective custody. On November 3, 1992, dependency petitions were filed alleging neglect and physical abuse of the children. A shelter care hearing was scheduled for November 4, 1991.

Prior to the hearing, the parents requested discovery of information contained in the police reports. The State refused to disclose the information, arguing that the witness statements were given on the condition that the identity of the witnesses would remain confidential. The State asserted that it was impossible to preclude identification of the reporting witnesses by merely deleting their names, and that if any portion of the police statements were released, the witnesses would be readily identified.

In the midst of the shelter care hearing, the trial court held an in camera hearing to determine whether the statements should be released to the parents. Although the caseworker and counsel for the State were both present during the in camera portion of the hearing, the parents and their counsel were not allowed to attend. After reviewing the statements, the court eventually denied discovery of the witness statements and concluded that the Williams' children should remain in protective custody. This appeal followed.

## II

Mr. Williams contends that the trial court violated his due process rights by denying him access to information contained in the police reports prior to the initial shelter care hearing. He argues that due process requires the disclosure of the statements of the three witnesses in the police reports. Mr. Williams has, however, cited no cases directly addressing his due process claims in the context of a shelter care hearing. He relies, instead, on *In re Moseley*, 34 Wn. App. 179, 660 P.2d 315, *review denied*, 99 Wn.2d 1018 (1983)[1] which only involves the due process protections that are afforded parents in a termination proceeding.

■■ The scope of the due process protections in a given situation is determined by balancing the private interests affected, the risk of error created by the State's procedure, and the countervailing governmental interest supporting the use of the challenged procedure. *Krause v. Catholic Comm'ty Servs.*, 47 Wn. App. 734, 739, 737 P.2d 280, *review denied*, 108 Wn.2d 1035 (1987). While parents have a fundamental liberty interest in the care and custody of their minor children; *In re Myricks*, 85 Wn.2d 252, 253-54, 533 P.2d 841 (1975); *In re Luscier*, 84 Wn.2d 135, 136-37, 524 P.2d 906 (1974); *In re C.R.B.*, 62 Wn. App. 608, 615, 814 P.2d 1197 (1991), the State has an equally compelling interest in protecting the physical, mental and emotional health of the children. *In re Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973); RCW 13.34.020 ("When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail."). In the context of a dependency

---

[1]In *Moseley*, the court listed the due process protections afforded parents in a termination hearing as follows:

"Procedural fairness is provided for in civil due process. Notice, open testimony, time to prepare and respond to charges, and a meaningful hearing before a competent tribunal in an orderly proceeding are all elements of civil due process." *In re Moseley*, at 184.

proceeding, due process requires that parents have notice, an opportunity to be heard and defend, and the right to assistance of counsel. *In re Myricks, supra; In re Key,* 119 Wn.2d 600, 611, 836 P.2d 200 (1992), *cert. denied,* ___ U.S. ___, 122 L. Ed. 2d 691, 113 S. Ct. 1302 (1993).

It has been noted that less process is due in dependency proceedings than in termination hearings. As explained in *Key,*

> A dependency proceeding and a termination proceeding have different objectives, statutory requirements, and safeguards. *In re Hiebert,* 28 Wn. App. 905, 908, 627 P.2d 551 (1981); *compare* RCW 13.34.130 *with* RCW 13.34.180 *and* RCW 13.34.190. The key difference in the dependency hearing is "a preliminary, remedial, nonadversary proceeding" that does not permanently deprive a parent of any rights. *In re A.W.,* 53 Wn. App. 22, 30, 765 P.2d 307 (1988), *review denied,* 112 Wn.2d 1017 (1989). A finding of dependency does not inevitably lead to a termination of parental rights. *In re Churape,* 43 Wn. App. 634, 639-40, 719 P.2d 127 (1986)[.]

*Key,* 119 Wn.2d at 609. A shelter care hearing is preliminary even to a dependency proceeding. Placement in foster care following a shelter care hearing under RCW 13.34.060 does not infringe upon parental rights as permanently[2] or as severely[3] as a dependency adjudication or full termination of parental rights under RCW 13.34. Thus, for example, the Rules of Evidence do not apply in shelter care hearings. *In re Brown,* 29 Wn. App. 744, 748, 631 P.2d 1 (1981).

▇▇ RCW 13.34.060(1) requires the Department to hold the initial shelter care hearing within 72 hours after the child is taken into custody. Requiring disclosure of sensitive information at this early stage of the proceedings would likely have the unwanted effect of discouraging individuals from reporting incidents of child abuse or neglect. In placing a child in shelter care, there is an obvious need for prompt

---

[2]A shelter care decision is subject to review every 30 days. RCW 13.34.060(10).

[3]The sole purpose of a shelter care hearing is to make a preliminary determination regarding whether there is or was probable cause to take the child into custody. *In re Brown,* 29 Wn. App. 744, 748, 631 P.2d 1 (1981).

and decisive action in order to protect a child from possible abuse and neglect. Given the relatively limited impact proceedings that the original shelter care hearing have on the parent-child relationship, a parent has not been denied due process when he or she has received notice and an opportunity to respond to the general allegations of dependency.[4]

Here, the allegations of abuse and neglect contained in the police statements of the three witnesses are adequately summarized in the dependency petition. The petition alleged that Mr. Williams' children were dependent for the following reasons:

1. On 10/22/92 Cherry Valley Elementary School notified CPS that [C.W.] reported his mother loaded a gun and threatened to kill his father and then threatened [C.W.].
2. On 10/28/92 the mother told the CPS social worker that [C.W] lies about things, and she denied threatening to kill the father with a loaded gun. She also denied hitting other than spanking.
3. On 10/30/92, at Cherry Valley Elementary School, Officer Sanders of Duvall Police Department and Officer Smith of Carnation Police Department placed both children in protective custody. Officer Sanders had three witness statements with numerous examples of neglect, and physical, verbal and emotional abuse.
4. According to a witness statement, the mother put shells into a rifle and said to the father, "I could blow your head off you motherfucker", then the father said someone could get hurt and she responded with, "That's my point exactly." The child [C.W.] was crying and hysterical but the mother did not unload the gun for about forty-five (45) minutes.
5. According to a witness statement the parents have hit the children many times with weapons, or open handed, in the back of the head; also, closed fist on the neck, spine, shoulders, kidneys, gut, and the legs. The children have demonstrated fear of being hit.
6. According to a witness statement, both parents have yelled and called the children many names including, "dunce, stupid, idiot, worthless piece of shit, little motherfucker, asshole, bastard, bitch, and wench."

---

[4]After the Department has had an opportunity to conduct an independent investigation of the allegations, there should be less reason to withhold the information in the police reports. In the event that a dependency proceeding is later held in this case, Mr. Williams would be entitled to additional due process protections. *See In re Myricks*, 85 Wn.2d 252, 253-54, 533 P.2d 841 (1975).

7. This family has had at least six (6) previous CPS referrals. The referrals occurred on 9/11/91 (physical abuse), 10/7/91 (physical abuse), 10/15/91 (physical abuse), 3/19/92 (physical abuse) 6/12/92 (sex abuse) and 8/10/92 (sex abuse).

Although the allegation of abuse and neglect in the petition are not as specific as those contained in the three witness statements, the summary gave Mr. Williams an opportunity to respond to the allegations. In addition, the State alleged during the shelter care hearing that the information contained in the undisclosed police witness statements was merely cumulative of other statements made by Mr. Williams' children.[5] The caseworker stated that the witness statements "support" stories of abuse given by Mr. Williams' children. The record clearly shows that Mr. Williams had access to the statements of his children. The allegations of abuse in the dependency petition therefore provided Mr. Williams with all the process due him at the original shelter care hearing.

■ Williams next contends that he had a statutory right to the documents under RCW 13.34.090(4), which states in pertinent part:

Copies of department of social and health services or supervising agency records to which parents have legal access pursuant to chapter 13.50 RCW shall be given to the child's parent, guardian, legal custodian, or his or her legal counsel, within twenty days after the department or supervising agency receives a written request for such records from the parent, guardian, legal custodian, or his or her legal counsel. These records shall be provided to the child's parents, guardian, legal custodian, or legal counsel prior to the shelter care hearing in order to allow an opportunity to review the records prior to the hearing. These records shall be legible and shall be provided at no expense to the parents, guardian, legal custodian, or his or her counsel.

However, RCW 13.34.090(4) is not the only statute governing discovery in juvenile proceedings.

RCW 13.50.100(4) provides in part:

A juvenile, his or her parents, the juvenile's attorney and the juvenile's parent's attorney, shall, upon request, be given

---

[5]The record before this court does not include any written or oral statements from the Williams' children. There is therefore no way of confirming whether the statements in the police report are indeed cumulative. Mr. Williams had the burden of providing this court with a sufficient record to review his claim of error.

> access to all records and information collected or retained by a juvenile justice or care agency which pertain to the juvenile except:
>
> . . . .
>
> (c) That the department of social and health services may delete the name and identifying information regarding persons or organizations who have reported suspected child abuse or neglect.

Viewed together, these two statutes permit the State to withhold the name and "identifying information" regarding people who have reported instances of suspected child abuse and neglect.

In this case, we have independently reviewed the three witness statements. The allegations of verbal, physical, and mental abuse contained in the witness statements are very specific and make it virtually impossible to disclose the information contained in the statements without also effectively identifying the source of the information. Under the circumstances, Mr. Williams has no statutory right to compel disclosure of the witness statements.

■ Finally, Mr. Williams contends that the trial court violated his due process rights when it conducted an in camera review of the police reports in the absence of the parents or their counsel, and in the presence of the Department of Social and Health Services (DSHS) caseworker and counsel for the State. "Due process guarantees the right to a full and fair hearing." *Baxter v. Jones*, 34 Wn. App. 1, 3, 658 P.2d 1274 (1983). It is undisputed that, although the parents and their attorneys were excluded from the in camera portion of the shelter care hearing, the DSHS caseworker and the State's attorney were not only present but were able to argue the merits of not releasing the police reports. Considering the parental rights involved, the procedure used in this case is manifestly unfair. Because shelter care hearings are reviewed on a monthly basis, however, the infringement on Mr. Williams' due process rights was not prejudicial. Mr. Williams has been given other opportunities to challenge the need for shelter care at subsequent hearings. The exclusion of Williams and his attorney from the in camera portion of

the initial shelter care hearing therefore does not require reversal. *See In re A.W.*, 53 Wn. App. 22, 27, 765 P.2d 307 (1988) (a party's subsequent participation in dependency review hearings and a termination adjudication may render harmless any due process violations at the initial hearing), *review denied*, 112 Wn.2d 1017 (1989); *In re McGee*, 36 Wn. App. 660, 663, 679 P.2d 933 (error without prejudice does not require reversal), *review denied*, 101 Wn.2d 1018 (1984).

The decision of the trial court is affirmed.