[Nos. 30937-8-II; 30943-2-II;    Division Two.    March 30, 2005.]
30947-5-II; 30953-0-II.

*In the Matter of the Welfare of* B.D.F. ET AL.

*Russell D. Hauge, Prosecuting Attorney for Kitsap County*, and *Holly G. Banks, Deputy*, for petitioner.

*Robert M. McKenna, Attorney General*, and *Garth A. Ahearn, Assistant*, for respondent.

¶1 VAN DEREN, J. — The Kitsap County Juvenile Department Guardian ad Litem (GAL) for B.D.F., N.J.F., J.R.F., and S.E.F., appeals the trial court's ruling vacating an order for a shelter care hearing. The trial court ruled that (1) a GAL in a chapter 13.34 RCW dependency action lacks standing to request a shelter care hearing; (2) the Department of Social and Health Services, Division of Children and Family Services (Department) is the only party that may request a shelter care hearing; (3) the court cannot initiate a shelter care hearing after the dependency petition is filed; and (4) the court lacks jurisdiction to order a

chapter 13.34 RCW shelter care hearing absent the Department's request. The Department emphasizes that mootness precludes our review but concedes on appeal that the GAL has standing to request a shelter care hearing in dependency cases.

¶2 We review the merits of this appeal because the GAL raises issues of continuing and significant public interest that will assist superior and juvenile courts and other public officers who have a duty to protect the welfare of children. Because the trial court's ruling misinterpreted chapter 13.34 RCW, we reverse and vacate it.

## FACTS

A. Background

¶3 On July 10, 2003, the Department filed dependency petitions on behalf of four minors, B.D.F., N.J.F., J.R.F., and S.E.F. The Department alleged that they were dependent under RCW 13.34.030(5)(b) and (c) because they were abused or neglected and had no parent or guardian capable of adequately caring for them. Each petition contained a Department social worker's affidavit describing the reasons for the dependency filing.

¶4 The social worker's affidavit asserted that the childrens' brother, C.F. (age eight), had recently died under circumstances suggesting negligence and/or physical abuse. C.F.'s autopsy report indicated that he died of bronchopneumonia and that there were multiple and significant blunt force injuries, both recent and old. The parents admitted to Child Protective Services that they abused and neglected C.F. and several of their other children.

¶5 According to a doctor's report, the parents failed to seek medical care for C.F. for at least three or four days before his death. In the four years before his death, C.F.'s height and weight had fallen from the 75th-95th percentile range to the 5th percentile range. The petitions requested that "the court inquire into this matter and make such

order as the court finds to be in the best interest of the child and justice," but did not allege imminent risk to the remaining children if they were not taken into the Department's custody. Clerk's Papers (CP) at 5.

## B. Preliminary Hearings Before the Court Commissioner

¶6 The Kitsap County Court Commissioner held two hearings. On July 14, 2003, the commissioner advised the parents of their rights and appointed counsel for them. He also appointed a court services officer of the Kitsap County Juvenile Department as the children's GAL.

¶7 At the second hearing on July 16, 2003,[1] the parents, their counsel, and the GAL discussed the dependency petitions and whether shelter care[2] was appropriate. The Department proposed an in-home placement that allowed the four children to remain at home, but it required the parents to attend parenting classes, and provided for visits by a social worker several times a week.

¶8 The GAL opposed an in-home placement for the children because the petitions alleged extraordinary abuse and neglect. The GAL cited Dr. Yolanda Duralde's report, referenced in the dependency petitions, expressing grave concerns for the children's safety in the home. The court commissioner was similarly cautious and rejected the Department's recommendation for an in-home dependency.[3]

---

[1] The verbatim report of proceedings erroneously dates the second preliminary hearing as July 17, 2003. For clarity, we modify the citations of this transcript to the accurate date of July 16, 2003.

[2] " 'Shelter care' means temporary physical care in a facility licensed pursuant to RCW 74.15.030 or in a home not required to be licensed pursuant to RCW 74.15.030." RCW 13.34.030(13).

[3] The court commissioner stated:

My concern, [counsel], in reading the Petition and, in particular, I don't have the benefit of the May 16th report from a Dr. Yolanda Duralde, which is referenced in the Petition, but the report, as referenced in the Petition, indicates that C.[F.], from the time of the last measurement, went from the 75th to 95th percentile physical development down to a 5th. . . . *[M]y concern is the Department's allegations, effectively, are that they killed their child through either abuse or neglect or a combination of that.* That's what I read. Now, I hear that there are four children, ages 5 months, 17 months, plus or minus[,] 3 years and

¶9 When the Department failed to explain its recommendation to the court commissioner's satisfaction, the commissioner put the parties on notice, based on the facts before it, of the possibility that the court might find the in-home placement agreement insufficient to protect the children. Consistent with RCW 13.34.050(2), the commissioner set a subsequent hearing to allow Dr. Duralde to testify and the parents an opportunity to provide further information about whether shelter care was appropriate.

¶10 The mother and the Department argued that, because the Department had not requested a shelter care hearing, the court could not set one. The commissioner responded:

> Shelter care is not a one way street. The State may agree with the parties. The parties may agree with the State. The Court is not obligated to follow any such agreements. The shelter care is being set for two reasons. Number one, because this court has rejected your agreement and [it's] *on the Court's motion to have a shelter care hearing*. But, number two, it's being conducted at [the GAL's] behest as well, as he has opposed the shelter care agreement that was offered. . . . I don't have information upon which I can conclude that this is appropriate.

Report of Proceedings (RP) (July 16, 2003) at 29-30 (emphasis added).

¶11 The commissioner then removed himself from hearing further proceedings and set the matter for a hearing before a superior court judge on July 21, 2003.

## C. Trial Court Hearing

¶12 Before the July 21 hearing, the mother, through her appointed counsel, filed a motion to quash the July 16 order, arguing that the court lacked jurisdiction to order a shelter

---

8 years, the Department wishes to leave in the home. I need to understand why the Department is saying that. I'm not disagreeing. *I just need to understand, particularly in view of the allegations in the Petition, because they are extraordinary and I require an extraordinary explanation as to why.*

Report of Proceedings (RP) at 10-11 (emphasis added).

care hearing where the Department had not requested it.[4] At the hearing, the Department stated, "In terms of the mother's motion, we are in agreement with [her] motion. The mother argues that the court does not have the authority to direct a shelter care hearing and that the present hearing should be dismissed absent a request filed by a party pursuant to [RCW] 13.34.150 [sic]." RP at 13-14.

¶13 The court granted the motion to quash the shelter care hearing order and entered five conclusions of law:

(1) The Court has jurisdiction over the children based on the filing of a dependency petition.

(2) When a dependency petition is filed by the State, through the Department, the Department is the only party that can request a shelter care hearing.

(3) The Court can act in the best interests of the children pending a fact finding hearing, but neither the Court nor the Guardian ad Litem can initiate a shelter care hearing.

(4) The Guardian ad Litem has no standing to seek shelter care under RCW 13.34.065.

(5) Absent an affidavit or declaration by the Department, under RCW 13.34.050, alleging imminent harm to the children, the court has no jurisdiction to order that a shelter care hearing be conducted.

CP at 47-48.

¶14 A commissioner later adopted an agreed order of dependency. The trial court dismissed the dependency actions on October 24, 2003.

D. Procedural History Before This Court

¶15 The GAL sought discretionary review under RAP 2.3(b)(2).[5] Following dismissal of the dependency actions, the GAL conceded that the issue of shelter care for these

[4] The parents are not parties on appeal and their appointed counsel did not file briefs or make an appearance for oral argument.

[5] RAP 2.3(b)(2) provides: "The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act."

particular children was moot. The GAL argued however, that the appeal presented issues of public importance that were capable of repetition and typically evaded review because of the short time between the initial shelter care hearings and the fact-finding hearings under chapter 13.34 RCW. We granted the GAL's motion for discretionary review under RAP 2.3(b)(2).

## ANALYSIS

### I. SIGNIFICANT MATTERS OF PUBLIC INTEREST

¶16 Both in its briefing and during oral argument, the Department emphasized that mootness precludes our review. We disagree.

¶17 We do not typically review a case that is moot because it asks for a determination of an abstract question that does not rest upon either existing facts or rights. *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004). But we review matters of continuing and significant public interest in order to provide future guidance to lower courts. *Horner*, 151 Wn.2d at 891. To invoke the public interest exception to mootness, we consider whether the issues presented are public or private in nature, the desirability of an authoritative determination to provide guidance to public officers, and the likelihood that the issues will recur. *Horner*, 151 Wn.2d at 892. We may also " 'consider the likelihood that the issue will escape review because the facts of the controversy are short-lived.' " *Horner*, 151 Wn.2d at 892 (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994)).

¶18 Although it was moot, we have previously reviewed a challenge to a shelter care proceeding partly because such proceedings routinely come before the superior court but typically evade appellate review given "the short time between the initial shelter-care hearing, the 30-day hearing and the fact-finding hearing." *In re Dependency of H.*, 71 Wn. App. 524, 528, 859 P.2d 1258 (1993); *see also In re*

*Placement of R.J.*, 102 Wn. App. 128, 132, 5 P.3d 1284 (2000) (discussing mootness and citing *In re Dependency of H.*).

¶19 Here, the challenged trial court ruling concerns significant matters of public interest because it asserts legal conclusions regarding the trial court's jurisdiction and the GAL's standing and duties in every dependency filed in the state of Washington.

¶20 A child's health and safety are of paramount concern in our dependency laws. RCW 13.34.020. The goal of a dependency hearing is to determine the welfare of the child and his best interests. *In re Dependency of J.B.S.*, 123 Wn.2d 1, 10, 863 P.2d 1344 (1993); *In re Welfare of Key*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). The Attorney General represents the Department in every dependency action in Washington. Indigent parents are entitled to representation in dependency matters at public expense. And GALs are required to represent the best interests of children in dependency cases, unless the child has independent counsel. RCW 13.34.090, .092, .100.

¶21 The best interests of children may be jeopardized if disputes over the trial court's jurisdiction and authority and the relative roles and duties of the Department and the GAL are allowed to continue. Further, there is a strong likelihood that future parties could dispute the interpretation of chapter 13.34 RCW. For example, a recent Washington court caseload report found that superior courts heard approximately 5,000 shelter care hearings in 2003. The Administrative Office of the Courts, Superior Court 2003 Annual Caseload Report, at 28; *see also Dependency of H.*, 71 Wn. App. at 528.

¶22 Thus, we review the merits of the GAL's appeal of the trial court's order. The trial court granted the mother's motion to quash the shelter care hearing order for two reasons: (1) a GAL lacks standing to request a shelter care hearing under RCW 13.34.065(1); and (2) RCW 13.34.050

does not grant the court jurisdiction to initiate a shelter care hearing absent the Department's request.[6]

¶23 We first review the standing issue.

## II. GAL's STANDING AND ABILITY TO REQUEST SHELTER CARE

■ ¶24 At the July 21, 2003 hearing, the GAL presented a motion and affidavit for an order to take the children into shelter care. But the trial court held that a GAL has no standing under RCW 13.34.065(1)[7] to initiate a shelter care hearing. On appeal, the Department concedes that GALR 4(h) provides standing for the GAL to seek shelter care on behalf of children in dependencies. We accept the Department's concession.

¶25 GALR 4(h)(2) states:

In every case in which a guardian ad litem is a party to the case pursuant to RCW 13.34 or RCW 26.26, a guardian ad litem shall have the rights and powers set forth below. . . .

. . . .

(2) *A guardian ad litem shall have the right to note motions and request hearings* before the court as appropriate to the best interests of the person(s) for whom a guardian litem was appointed.[8]

(Emphasis added.)

¶26 GALR 4(h)(2)'s plain language clearly grants the GAL standing to note motions and request hearings on behalf of children in dependency cases. Further, RCW 13.34.105(1) also endorses the GAL's standing and duty to advocate for children. The GAL is vested with duties to

---

[6] We emphasize that it is undisputed that the Department initiated the court's dependency inquiry by properly filing the dependency petitions with the court. Consequently, the parties do not dispute the accuracy of the trial court's first conclusion of law: "The Court has jurisdiction over the children based on the filing of the dependency petition[s]." CP at 46.

[7] RCW 13.34.065(1) states: "The juvenile court probation counselor shall submit a recommendation to the court as to the further need for shelter care unless the petition has been filed by the department, in which case the recommendation shall be submitted by the department."

[8] When a court rule and a procedural statute are inconsistent, the court rule governs; the reviewing court makes every effort to harmonize such apparent conflicts. *State v. Blilie*, 132 Wn.2d 484, 491, 939 P.2d 691 (1997).

"represent and be an advocate for the best interests of the child" and to "make recommendations based upon an independent investigation regarding the best interests of the child, which the court may consider and weigh in conjunction with the recommendations of all of the parties." RCW 13.34.105(1)(e) and (d). This statute plainly authorizes the GAL to initiate a shelter care hearing, even when the Department disagrees. And JuCr 2.5 provides that, "[a]ny party may move to amend a shelter care order."

¶27 Thus, we hold the trial court's order, that the GAL did not have standing to initiate a shelter care hearing, misinterpreted RCW 13.34.065(1) and was contrary to GALR 4(h)(2), RCW 13.34.105(1), and JuCr 2.5.

### III. TRIAL COURT'S AUTHORITY

¶28 The trial court also ruled that it lacked jurisdiction to order a shelter care hearing under RCW 13.34.050 because (1) the Department had not filed an affidavit or declaration declaring imminent harm to the children and (2) the Department was the only party permitted to request a shelter care hearing. This ruling was also erroneous.

■ ■ ¶29 We review the trial court's ruling de novo because statutory interpretation is a matter of law. *State v. Beaver*, 148 Wn.2d 338, 344, 60 P.3d 586 (2002). "The court's fundamental objective is to ascertain and carry out the legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). We also examine the statutory scheme. *Murphy*, 151 Wn.2d at 242.

■ ¶30 Any person may file a petition with the trial court showing that there is a dependent child and requesting that the court attend to the child's needs. RCW 13.34.040(1). RCW 13.34.050 authorizes the trial court to take the child into custody if the child's health, safety, or welfare is seriously endangered. The statute states:

(1) The court may enter an order directing a law enforcement officer, probation counselor, or child protective services official to take a child into custody if: (a) A petition is filed with the juvenile court alleging that the child is dependent and that the child's health, safety, and welfare will be seriously endangered if not taken into custody; (b) *an affidavit or declaration is filed by the department in support of the petition* setting forth specific factual information evidencing reasonable grounds that the child's health, safety, and welfare will be seriously endangered if not taken into custody and at least one of the grounds set forth demonstrates a risk of imminent harm to the child. "Imminent harm" for purposes of this section shall include, but not be limited to, circumstances of sexual abuse, or sexual exploitation as defined in RCW 26.44.020; and (c) *the court finds reasonable grounds* to believe the child is dependent and that the *child's health, safety, and welfare will be seriously endangered if not taken into custody*.

(2) *Any petition that does not have the necessary affidavit or declaration demonstrating a risk of imminent harm requires that the parents are provided notice and an opportunity to be heard before the order may be entered.*

RCW 13.34.050(1), (2) (emphasis added).[9]

¶31 RCW 13.34.050(2) allows the trial court to enter an order removing the children from the home so long as it provides the parents with notice and an opportunity to be heard before entering the order. RCW 13.34.050(2) expressly emphasizes that a petition need not be supported by an affidavit or declaration alleging imminent harm before the trial court has the authority to conduct a shelter care hearing.

¶32 The statutory scheme of chapter 13.34 RCW is consistent with the trial court's authority under RCW 13.34.050. For example, if a child is taken into custody under RCW 13.34.050 and a parent or other interested party "desires to waive the shelter care hearing, *the court shall determine*, on the record and with the parties present, whether such waiver is knowing and voluntary." RCW

_____

[9] RCW 13.34.050's remaining section concerns the service of the petition on the child's parents; however, service is not an issue here.

13.34.060(1)(b) (emphasis added). RCW 13.34.062(4) requires that the court resolve whether the interested parties received proper notice of the shelter care order and that the court "shall examine the need for shelter care" and evaluate the parties' "testimony to the court regarding the need or lack of need for shelter care." RCW 13.34.065 emphasizes the court's essential role in determining the need for further shelter care. And RCW 13.34.110(2)(b) requires that the court approve any stipulated dependency order.

¶33 Thus, given the statutory scheme in chapter 13.34 RCW and RCW 13.34.050's unambiguous statutory language, we hold that the trial court misinterpreted RCW 13.34.050 to make the Department's request the sole method of invoking the court's jurisdiction to order a shelter care hearing.

¶34 Our reading of chapter 13.34 RCW is reinforced by the court's duty to resolve dependency matters in the best interests of children. Courts have broad discretion and are allowed considerable flexibility to receive and evaluate all relevant evidence in order to reach a decision recognizing both the welfare of the child and parental rights. *In re Dependency of J.S.*, 111 Wn. App. 796, 804, 46 P.3d 273 (2002) (citing *In re Welfare of Becker*, 87 Wn.2d 470, 478, 553 P.2d 1339 (1976)). In determining placement, the best interests of the child are the court's paramount concern. *See, e.g., Dependency of J.B.S.*, 123 Wn.2d at 10.

¶35 At the July 16 hearing, the court commissioner articulated this vital duty:

[T]hese proceedings are about the best interest of the child fundamentally.

. . . .

And, in this particular case, for the reasons that I have described, I have grave reservations as to the appropriateness of these particular circumstances for an in-home dependency or in-home shelter care.

RP at 26, 31. The commissioner ordered the July 21 shelter care hearing for the express purpose of allowing the court to

hear testimony about the appropriate placement for the children.

¶36 At a shelter care hearing, the trial court may accept or reject the Department's recommendation. Here, the trial court's ruling precluding a shelter care hearing erroneously restricted its own discretion, contrary to chapter 13.34 RCW. The entire statutory scheme vests the court with both the authority and the responsibility to determine whether there is a serious threat to the child and grants the court discretion to determine and order a service plan that serves the best interests of a child.

¶37 Because a GAL has standing to seek shelter care on behalf of children in dependencies and the superior court has authority to initiate a shelter care hearing, we reverse and vacate the trial court's order.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.