177 P.3d 186 (2008)
DEPENDENCY OF R.W.
Dependency of K.W.
Nos. 35692-9-II, 35699-6-II.
Court of Appeals of Washington, Division 2.
February 20, 2008.
*187 Lisa Elizabeth Tabbut, Attorney at Law, Longview, WA, for Appellant.
Eugene Graff, WA Attorney General's Office, Vancouver, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 T.F.[1] is the biological father of K.W. and R.W., now aged 17 and 14 years old.[2] The children were born in California, where they lived with their mother until 1994, when she took the children and moved to Longview, Washington. When they lived in California, the children had little contact with their father, but did visit their paternal grandmother. Following the move, the children continued to visit their paternal grandmother in California each summer. The children saw their father at their paternal grandmother's home during those visits.
¶ 2 In early 2005, K.W. became pregnant by her mother's 31-year-old boy friend and disclosed a history of neglect and abuse. The Department of Social and Health Services petitioned to have K.W., R.W., and their eight-year-old half-sister, E.W.,[3] made dependents of the court. The juvenile court found the three children dependent as to both parents and placed them with their maternal grandmother in Kelso, Washington.
¶ 3 Their father did not appeal the finding that his children were dependent as to him, but he became more involved with his children. He complied with the juvenile court's order to attend parenting training and increased contact with his children. He did not file a parenting plan nor did he petition for custody at that time.
¶ 4 In October, 2006, the State moved to make the children's placement with their maternal grandmother permanent. Although *188 this placement had the practical effect of terminating the father's parental rights, the State did not file a petition to terminate, stating that the law required that it craft a placement plan that would allow the juvenile court to reunite the children with their mother, the parent with whom they were living at the time of the dependency action; the juvenile court issued a permanent parenting plan that called for K.W. and R.W. to continue living with their maternal grandmother until they could be reunited with their mother. The father challenged this placement plan, asserting that the trial court based its decision on an erroneous ruling that it was required to support reunification with the mother and not on the children's best interests.
¶ 5 This court granted the father's motion to modify the commissioner's ruling denying relief and dismissing his notice of appeal. See RAP 5.1(c) ("A notice of appeal of a decision which is not appealable will be given the same effect as a notice for discretionary review"). We treat the father's notice of appeal as a request for discretionary review and we grant review to address the following issue: Was the juvenile court required to enter a permanent placement order that increased the likelihood of reuniting dependent children with the parent who had custody of the children at the time they became dependent or could it consider the best interests of the children and possible placement with their non-custodial parent?
¶ 6 We hold that the law does not require the juvenile court to seek to reunite dependent children with the parent who had custody at the time of the dependency action if it is not in the children's best interest. RCW 13.34.020. Accordingly, to the extent that the juvenile court based its decision on the erroneous belief that it was required to approve a placement plan that would allow reunification with the mother, it erred. We reverse and remand for the juvenile court to reconsider the children's placement based on their best interests.

Discussion
Dependency Placement: Best Interest of the Children
¶ 7 The children's father asserts that the juvenile court erroneously interpreted the dependency statute (RCW 13.34.020) requiring it to give priority to returning the children to the parent who had custody before the dependency. We agree.
¶ 8 "A placement decision in a dependency proceeding is discretionary and will be overturned on appeal only upon a showing of an abuse of discretion." In re Dependency of A.C., 74 Wash.App. 271, 275, 873 P.2d 535 (1994). The trial court has broad discretion and is allowed considerable flexibility to receive and evaluate all relevant evidence to reach a decision recognizing both the welfare of the child and the parents' rights. In re the Welfare of B.D.F., 126 Wash.App. 562, 574, 109 P.3d 464 (2005) (citing In re Dependency of J.S., 111 Wash.App. 796, 804, 46 P.3d 273, review denied, 147 Wash.2d 1014, 62 P.3d 889 (2002)).
¶ 9 In determining an appropriate placement, however, the best interests of the child are the court's paramount concern. RCW 13.34.020;[4]In re Dependency of J.B.S., 123 Wash.2d 1, 10, 863 P.2d 1344 (1993). The criteria for establishing the best interests of the child are not capable of exact specification because each case is largely dependent on its own facts and circumstances. In re Welfare of Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980). Although parents have a fundamental liberty and privacy interest in the care and custody of their children, a trial court should not allow the rights of the *189 biological parents to override a child's best interests when determining placement under the dependency statute. RCW 13.34.020; J.B.S., 123 Wash.2d at 8, 12, 863 P.2d 1344.
¶ 10 In this case, the juvenile court ignored the father's request that his daughters be placed in his care, repeatedly indicating that the law required reunification with their mother and that the purpose of the dependency statute was that "the reunification be attempted with the placement." 2 Report of Proceedings (RP) at 24. It also stated that "the statute requires that we [try] reunification with the primary parent the place where the children are removed from and I think that has a real bearing in this case." 2 RP at 64-65 (emphasis added). But in this case, the lower court's ruling is contrary to the legislature's expressed concern to assure that the child's best interests prevail. RCW 13.34.020; J.B.S., 123 Wash.2d at 8-9, 863 P.2d 1344.[5]
¶ 11 The statute is clear and unambiguous in declaring that "a child's rights to conditions of basic nurture, health, or safety" outweigh the desire to keep the family unit intact. RCW 13.34.020. The juvenile court's obligation in this case was to order placement of these dependent children in their best interests. RCW 13.34.020.
¶ 12 From the evidence in this record, we cannot say that the juvenile court would have approved the placement plan if it had not believed that it was required to favor the previous custodial parent, the mother. Here, the juvenile court expressed concern about the mother's lack of progress in developing parenting skills necessary for reunification, her apparent minimization of the damage her lifestyle caused K.W., and her continued disruptive and unrestricted contact with her children. The record also suggests that the children continued to have difficulties with school, and some evidence indicates that the maternal grandmother's home contributed to these difficulties by being chaotic, dirty, and undisciplined. In addition, the record shows that placement with her maternal grandmother forced K.W. to live next door to the mother of the man who raped her.[6]
¶ 13 We reverse the order permanently placing the children with their maternal grandmother and remand to the juvenile court for it to determine placement in the children's best "interests without regard to possible reunification with their mother, who had custody of them at the time of the dependency.
We concur: BRIDGEWATER, P.J., and HUNT, J.
NOTES
[1] Because of the nature of this case, some confidentiality is appropriate. Accordingly, this court has determined pursuant to RAP 3.4 that the names of the parties will not be used in the case caption or the body of this opinion. For the sake of clarity, we will use the children's initials and will refer to their parents, T.F. and K.S.W., as father and mother, respectively.
[2] K.W. was born on January 9, 1991, and R.W. was born on May 7, 1993.
[3] E.W. is not T.F.'s biological child. E.W. has not been included in this appeal.
[4] RCW 13.34.020 provides:

The legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail. In making reasonable efforts under this chapter, the child's health and safety shall be the paramount concern. The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter.
[5] Prior to the legislature's amendment in 1987, the section made no reference to the child's interests and only specified that: "[T]he legislature declares that the family unit should remain intact in the absence of compelling evidence to the contrary." J.B.S., 123 Wash.2d at 9 n. 3, 863 P.2d 1344 (quoting Laws of 1977, 1st Ex.Sess.; ch. 291, § 10).
[6] The State had also filed for the dependency of K.W.'s baby, placing him in K.W.'s maternal grandmother's care as well.