**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of:<br><br>B.B.B.,<br><br>              Minor Child. | No. 84266-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUNG, J. — B.B.B. was placed in shelter care beginning in February 2022. After the initial 72-hour shelter care hearing, the court held three subsequent "30-day" shelter care hearings. B.B.B.'s mother moved at a fourth hearing to schedule a fifth hearing in another thirty days. The court denied the motion, reasoning that under RCW 13.34.065(7)(a)(i), shelter care continuing more than thirty days requires "an order," but not a hearing every month, despite the court's past practice. A commissioner of this court granted discretionary review. Because the statute's plain language does not require monthly review hearings for continuing shelter care, we affirm.

FACTS

This case concerns the shelter care of an infant child, B.B.B., born in January 2022, who was the subject of a dependency petition filed by the Department of Children, Youth, and Families (DCYF or the State) the following

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84266-8-I/2

month. The court ordered B.B.B. to be placed in shelter care on February 17, 2022.

Following the 72-hour initial shelter care hearing required by statute, B.B.B. was placed with his maternal grandmother on February 22. At that hearing, the father waived his parental rights.[1] The court set a 30-day shelter care hearing for March 23.

That shelter care hearing was continued twice and ultimately was held on April 7. The court's ensuing order stated, "The order entered on 2/22/22 remains in full force and effect," and, "[p]ursuant to the requirements of RCW 13.34.065(7), the court authorizes continued shelter care for the child." The order also stated, "No contested issues were noted for the 30 Day Shelter Care hearing," and, based on evidence from DCYF, ordered that the mother's visitation was now unsupervised but that supervision of the father's visitation should continue. Finally, the court order checked the box indicating "[a]n additional shelter care review hearing is necessary . . . to address the following issues," and specified as the issue the "mother's request to release the child to her care," and scheduled the hearing for May 4.

After B.B.B.'s second 30-day shelter care hearing on May 4, the court's order noted no contested issues, authorized continued shelter care, and kept in effect the terms of the prior orders. The court again found "[a]n additional shelter

---

[1] The father is not a party to the case on discretionary review.

No. 84266-8-I/3

care review hearing is necessary . . . to address the following issues," but this time wrote, "as noted by any party per local rule."

B.B.B.'s third 30-day shelter care hearing was held on June 1. The resulting order again noted no contested issues, authorized continued shelter care, and kept in effect the terms of the prior orders. As in the May 4 order, the court again found "[a]n additional shelter care review hearing is necessary . . . to address the following issues: as noted by any party per local rule." However, this time the court ordered the parties to brief the issue of "whether a parent is entitled to an additional shelter care hearing every 30 days when one 30-Day Shelter Care Hearing has already occurred and the parent's visits are unsupervised."

At B.B.B.'s fourth 30-day shelter care hearing on June 29, as to whether an additional shelter care hearing was needed, the mother argued that under the statute, continuing shelter care requires a judge to either hold a hearing or enter an uncontested order. She further contended that such hearings are necessary for due process and that the local rule, KING COUNTY SUPER. CT. LOCAL JUV. COURT RULE (LJuCR) 2.5, unfairly prejudiced parents by shifting to them the burden of showing changed circumstances. In support, the mother provided affidavits from attorneys in Mason, Pierce, Snohomish, and Whatcom counties stating that those courts schedule hearings every thirty days while a child is in shelter care. For its part, the State acknowledged and deferred to "a change in practice" announced by the dependency bench in King County, reflected in LJuCR 2.5(b).

3

No. 84266-8-I/4

The court noted the mother had already had three 30-day shelter care hearings and "that the mother's insistence of having a 30-day shelter care hearing in May and now in June, yet going on the record and just signing a status quo order because her visits are unsupervised at this time[,] is a waste of judicial resources not contemplated by the statute." The court concluded that its first 30-day shelter care order dated April 8 satisfied the statute, and denied the mother's request to set another 30-day shelter care hearing. The court also noted, "Yesterday the judges approved an amendment to [LJuCR] 2.5" to take effect later in September, but "under the current [LJuCR] 2.5 . . . the [c]ourt is happy to hear any motions that need to be set under [LJuCR] 2.5 if there's an issue that needs to be addressed."

In its written order, the court incorporated by reference "its oral findings, conclusions, and ruling on the issue of the meaning of RCW 13.34.065(7)(a)(i) in its denial of the mother's request for an additional 30-day shelter care hearing." Other than denying the request for an additional shelter care review hearing, like the previous shelter care orders, the court's July 1 order noted no contested issues, authorized continued shelter care, and kept in effect the terms of the prior orders.

The mother moved this court for discretionary review of the court's July 1 order. A commissioner of this court granted review under RAP 2.3(b)(3).[2]

---

[2] RAP 2.3(b)(3) provides that discretionary review may be accepted only when "[t]he superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court."

No. 84266-8-I/5

DISCUSSION

I.     Mootness

The parties agree the issue is moot because B.B.B.'s mother subsequently agreed to a dependency order, and generally an appellate court will not review a moot case. In re Dependency of L.C.S., 200 Wn.2d 91, 99, 514 P.3d 644 (2022). But an appellate court may nevertheless review a moot case if the contested issue is a matter of continuing and substantial public interest. Id.

The mother argues the exception applies because the issue "is *guaranteed* to reoccur, at least in King County," and its resolution will provide guidance as to the statute's meaning. The State argues this exception does not apply because it was the *mother's* decision not to follow King County's local rule, and the rule still allows a parent to request a hearing to amend a shelter care order, so this case is not an issue of *public* interest. We agree with the mother.

In deciding whether a case presents an issue of continuing and substantial public interest, this court considers the following factors: whether the issue is of public or private nature; whether an authoritative determination is desirable to provide future guidance, and whether the issue is likely to reoccur. Id. The court may also consider the adverseness of the parties, the quality of the advocacy, and the likelihood that the issue will escape review. Id.

5

No. 84266-8-I/6

Here, the issue raised pertains to the interpretation of a statute frequently employed by juvenile courts and a local rule in the state's largest superior court. The former LJuCR 2.5 (2021), in effect when the court ruled on B.B.B.'s mother's motion, provided that a second 30-day hearing "shall" be set within 30 days, but "[u]nless a party has filed and served written notice of new issues . . . a hearing in open court will not occur; parties['] presence will be excused; and an order continuing the terms of the 72 hour shelter care hearing will be entered by the court." Former LJuCR 2.5(a)(1), (2). New issues required "reasonable" advance notice to the court. Former LJuCR 2.5(a)(3). And a shelter care order could be modified at any time on six days' notice of a change in circumstance. Former LJuCR 2.5(b).

The amended local rule, in effect since September 2022, contains those same provisions and also adds detail regarding procedural requirements. LJuCR 2.5(a)(3), (b). In addition, the amended rule provides that no hearing will occur if either the court previously ordered unsupervised visitation or no party has timely provided a report that includes evidence that removing previously ordered visit supervision or monitoring would create a risk to the child's safety. LJuCR 2.5(a)(2)(A), (B).

This court has previously reviewed shelter care issues despite mootness, in part because "such proceedings routinely come before the superior court but typically evade appellate review given 'the short time

6

No. 84266-8-I/7

between the initial shelter-care hearing, the 30-day hearing and the fact-finding hearing.' " In re Welfare of B.D.F., 126 Wn. App. 562, 569, 109 P.3d 464 (2005) (quoting In re Dependency of H., 71 Wn. App. 524, 528, 859 P.2d 1258 (1993)). The statute's proper meaning, and whether King County's local rule comports with it, is a public issue that would benefit from further guidance. We agree with B.B.B.'s mother that the issue is likely to reoccur because the court's decision represents a change in the usual course of judicial proceedings. Thus, the continuing and substantial public interest exception to mootness applies and we reach the merits of the dispute.

 II. Does RCW 13.34.065(7)(a)(i) require monthly hearings?

  Turning to the merits, B.B.B.'s mother alleges the court erred by "abdicating its . . . duty to conduct monthly review hearings . . . as required by RCW 13.34.065." The State argues the court correctly interpreted the statute when it declined to schedule an additional 30-day shelter care hearing absent the identification of a contested issue. We agree with the State.

  Statutory interpretation is a question of law that the appellate court reviews de novo. In re Dependency of Z.J.G., 196 Wn.2d 152, 163, 471 P.3d 853 (2020). The purpose of statutory interpretation is to determine legislative intent and to do so in such a way so as to carry out that intent. Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 80, 91, 392 P.3d 1025 (2017).

No. 84266-8-I/8

" 'If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction.' " In re Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.3d 492 (2016) (quoting HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009)). We also examine the statutory scheme. B.D.F., 126 Wn. App. at 572 (interpreting statute authorizing shelter care hearings). Plain meaning "is derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.' " Z.J.G., 196 Wn.2d at 163 (quoting Jametsky v. Olsen, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014)). Historical versions of the same or similar statutes shed light on a statute's meaning. Graffell v. Honeysuckle, 30 Wn.2d 390, 399, 191 P.2d 858 (1948) (observing that "resort to repealed and superseded statutes may be had, and is of great importance in ascertaining the intention of the legislature.").

Shelter care is embedded within an "ongoing process" that governs dependency and termination. In re Dependency of Chubb, 112 Wn.2d 719, 724, 773 P.2d 851 (1989); ch. 13.34 RCW.[3] At the initial stage of a dependency proceeding, RCW 13.34.050 gives the court authority to order a law enforcement officer, a probation counselor, or a child protective services official to take a child into custody in certain circumstances,

---

[3] The short title of Chapter 13.34 RCW is "Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship." RCW 13.34.010.

No. 84266-8-I/9

including, as relevant here, if a dependency petition is filed with the juvenile court.

RCW 13.34.060 requires that any child taken into custody must have an initial shelter care hearing within 72 hours—i.e., the 72-hour hearing. Then, whether or not the child is in shelter care, the court must hold a fact-finding hearing on the dependency petition no later than 75 days after the petition is filed, absent exceptional circumstances. RCW 13.34.070(1). After the fact-finding hearing, the court must either dismiss the petition or enter a dependency order. RCW 13.34.110.[4]

The specific language at issue here appears in RCW 13.34.065, which is entitled "Shelter care—Hearing—Recommendation as to further need—Release" and sets out detailed requirements for the shelter care hearing and the topics for the court's inquiry at the hearing.[5] The relevant subsection reads as follows:

> A shelter care order issued pursuant to this section may be amended at any time with notice and hearing thereon. The shelter care decision of placement shall be modified only upon a showing of change in circumstances. *No child may be placed in shelter care for longer than thirty days without an order, signed by the judge, authorizing continued shelter care.*

---

[4] Chapter 13.34 RCW implements federal law governing the services to be provided to children in foster care. See 42 U.S.C. § 671(a)(15); Washington State Coal. for the Homeless v. Dep't of Soc. & Health Servs., 133 Wn.2d 894, 919, 949 P.2d 1291 (1997) ("RCW 13.34 was enacted to conform with federal law governing what services are to be provided to children in foster care.").

[5] For example, the subsections of RCW 13.34.065 provide that a child in custody must have a hearing regarding shelter care within 72 hours, that parents must receive notice, and that a case conference must be scheduled. RCW 13.34.065. Amendments effective July 1, 2023, do not affect subsection 7.

No. 84266-8-I/10

RCW 13.34.065(7)(a)(i) (emphasis added).

Here, the parties both claim RCW 13.34.065(7)(a)(i) is unambiguous. They disagree, however, as to its meaning. The mother argues that the statute "requires a court [to] provide . . . ongoing review every thirty days," and that the trial court "read[] out the term 'continued' and render[ed] it superfluous." But nothing in the plain language of this subsection requires a court to conduct a shelter care review *hearing* every thirty days.

The phrase "continued shelter care" must be read in the context of the chapter on juvenile dependencies. When a child is first taken into custody pursuant to RCW 13.34.050, the child "shall be immediately placed in shelter care." RCW 13.34.060(1). "No child may be held longer than [72] hours . . . unless a court order has been entered for *continued shelter care*." RCW 13.34.060 (emphasis added). Thus, the initial period of custody, even prior to the 72-hour hearing, is the initial period of shelter care. Any further shelter care beyond this initial period, which the court may order only after the 72-hour hearing, is "continued shelter care."

The plain language of the subsection at issue here requires that if the court authorizes shelter care for longer than thirty days, it must do so with "an order, signed by the judge, authorizing continued shelter care." RCW 13.34.065(7)(a)(i). Other than the 72-hour hearing, the statute does not require a hearing for "an order . . . authorizing continued shelter care."

10

No. 84266-8-I/11

While the subsection at issue allows for shelter care orders to be amended "at any time" with notice and a hearing, it does not, in contrast to the initial 72-hour hearing, include any notice or hearing requirement for an order authorizing continued shelter care where there is no amendment requested. RCW 13.34.065(7)(a)(i). And only modifications of "[t]he shelter care *decision of placement*" specifically require a showing of change of circumstance. Id. (emphasis added). Thus, although a party may request amendment to an order for "continued shelter care"—i.e., any period of shelter care following the 72-hour hearing—if there are no requested amendments, the statute does not require a hearing, nor subsequent hearings every thirty days.[6]

The mother argues that this court already stated in In re Dependency of H.W., 70 Wn. App. 552, 559, 854 P.2d 1100 (1993), that shelter care hearings are held on a "monthly basis."[7] However, that case did not address whether such monthly hearings are statutorily required. Instead, in H.W., the issue was whether appellant's due process rights were violated by failing to allow the appellant to compel disclosure of

---

[6] The distinction between a 72-hour hearing and "an order . . . authorizing continued shelter care" dates to the original version of the Act. Compare former RCW 13.34.060(1) (1977) ("The court shall hold a preliminary shelter care hearing if one is requested") with former RCW 13.34.060(8) (1977) ("No child shall be detained for longer than thirty days without an order, signed by the judge, authorizing continued shelter care.").

[7] The State notes that the former RCW 13.34.060(10) in H.W. is a different statute from the current RCW 13.34.065(7)(a)(i) at issue here. However, the substantive language of the slightly differently numbered statutes is all but identical despite the three decades separating them, with the only changes being from "[n]o child may be *detained* for longer than thirty days" in former RCW 13.36.060(10) (1993) (emphasis added), to "[n]o child may be *placed in shelter care* for longer than thirty days," in the current RCW 13.34.065(7)(a)(i) (emphasis added).

11

No. 84266-8-I/12

statements to police that led to a shelter care order regarding his two children. 70 Wn. App. at 555. This court held that, while the appellant was subjected to manifest unfairness, infringement on the appellant's due process rights was not prejudicial because of the interlocutory nature of shelter care. Id. at 559. We reasoned that shelter care orders do not infringe on parental rights as permanently or severely as a dependency adjudication or full termination "[b]ecause shelter care hearings are reviewed on a monthly basis." Id. at 559. In a footnote, the court noted that "[a] shelter care decision is subject to review every 30 days. [Former] RCW 13.34.060(10)." Id. at 556 n.2. However, "[i]n cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised." Berschauer/Phillips Const. Co. v. Seattle Sch. Dist. No. 1, 124 Wn.2d 816, 824, 881 P.2d 986 (1994). Consequently, H.W. does not control the interpretation of the current statute's plain language in the present case.

The mother further argues that additional review hearings are not "a waste of time" even "if the parties agree that nothing has changed," but instead, are required because of "this [c]ourt's conclusion in B.D.F.: even if a nothing changes [sic], a trial court still *must* make determinations on the record." There, the trial court ruled that it lacked jurisdiction to order a shelter care hearing under RCW 13.34.050 because the Department of Social and Health Services was the only party that could request a shelter care hearing. B.D.F., 126 Wn. App. at 570-71. Division II reversed and

12

No. 84266-8-I/13

vacated the trial court's order, holding that a guardian ad litem could request a shelter care hearing. Id. at 575. In so doing, the court stated that "RCW 13.34.065 emphasizes the court's essential role in determining the need for further shelter care." Id. at 574.

In support of her argument, B.B.B.'s mother notes that the B.D.F. court also stated, "For example, if a child is taken into custody under RCW 13.34.050 and a parent or other interested party 'desires to waive the shelter care hearing, *the court shall determine,* on the record and with the parties present, whether such waiver is knowing and voluntary.' RCW 13.34.060(1)(b) (emphasis added)." Id. at 573-74. But the provision the B.D.F. court cites sets out specific requirements for the *initial* 72-hour hearing and any shelter care order issued at that time. The B.D.F. court did not address the statutory provision at issue here, RCW 13.34.065(7), which concerns the amendment of an existing shelter care order for *continued* shelter care beyond thirty days. Thus, the B.D.F. court's holding regarding a different statute does not control the interpretation of the plain language of the statutory provision at issue here.[8]

Courts undoubtedly have an important gatekeeping and *parens patriae* role in safeguarding due process in dependency proceedings, as

---

[8] The mother makes a similar argument that regular hearings are required based on In re Dependency of K.N.J., 171 Wn.2d 568, 257 P.3d 522 (2011). There, the court noted that by statute, "the court must periodically review the status of all dependent children" and must "review the progress of the parties and determine whether court supervision should continue." Id. at 579. The court cited to RCW 13.34.138. Id. But that case is about dependency review hearings under RCW 13.34.138, not shelter care.

13

No. 84266-8-I/14

both children and parents have vital and fundamental liberty interests at stake.[9] See Matter of Dependency of S.K.-P., 200 Wn. App. 86, 98, 401 P.3d 442 (2017) (discussing children's and parents' respective liberty interests), aff'd sub nom. Matter of Dependency of E.H., 191 Wn.2d 872, 427 P.3d 587 (2018); In re Dependency of M.S.R., 174 Wn.2d 1, 20, 271 P.3d 234 (2012) ("Judges are forced to make incredibly difficult and important determinations" in dependency proceedings). We are mindful of the power of both the State and the courts in such proceedings, as well as the potential of each decision, starting with an initial shelter care order, to create a deep and lasting impact on parents and their children. Nevertheless, we must look to the relevant statute to set out the process that protects the parties' interests. Here, RCW 13.34.065(7)(a)(i) does not require ongoing monthly review hearings of shelter care that continues beyond thirty days. Thus, King County's LJuCR 2.5 is not contrary to RCW 13.34.065(7)(a)(i).

We recognize that hearings every thirty days have long been the practice in King County and continue to be the practice in at least several other counties. While we hold that RCW 13.34.065(7)(a)(i) does not require such hearings, it also does not prohibit courts from holding such hearings.

---

[9] We disapprove of the trial court's ill-considered words to the extent they suggested that the court's performance of its role in dependency proceedings is "a waste of judicial resources."

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84266-8-I/15

We affirm.

_____
Chung, J.

WE CONCUR:

_____
Birk, J.

_____
Mann, J.